Ricardo **RILEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CF–1430.

District of Columbia Court of Appeals.

Argued Dec. 10, 2001.
Decided Jan. 24, 2002.

Kali N. Bracey, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Lisa Monaco, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, James Sweeney, and Alexandre Rene, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate Judge.

Ricardo Riley was convicted of armed robbery based on evidence that he drove the getaway car for Thomas Bell after Bell held up a Payless Shoe Store at gunpoint. On appeal, Riley seeks a new trial because the trial court permitted the government to introduce other crimes evidence on the issue of Riley's intent to aid and abet Bell in the commission of the robbery. This evidence consisted of testimony that a month before Riley was arrested in this case, the police stopped him while he was driving the getaway car for Bell following the armed robbery of another retail establishment.[1] Riley contends that the trial court erred in admitting this telling evidence because he did not "meaningfully contest" the element of intent. We conclude otherwise. Beginning with his counsel's opening statement, which was delivered immediately after the government's opening, Riley did contest the government's proof of his intent in a "meaningful" fashion. Indeed, Riley's intent to aid and abet the commission of an armed robbery was the central issue in the case. The trial judge therefore did not err in allowing the government, at the close of its case-in-chief, to present the other crimes evidence.

"[E]vidence of a crime for which the accused is not on trial is 'inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged.'" *Busey v. United States,* 747 A.2d 1153, 1164 (D.C.2000) (quoting *Drew v. United States,* 118 U.S.App. D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964)). Other crimes evidence is admissible, however, when it is "relevant and important" to the issue of intent

---

1. To minimize the danger of unfair prejudice to Riley, the trial judge permitted the government to present testimony that the police arrested Bell, but not that Riley himself also was arrested for the earlier holdup. Based on this restriction of its proof, the government argues that it did not present other crimes evidence against Riley. This argument blinks the reality that the jury could put two and two together and perceive Riley as Bell's accomplice in the first armed robbery.

(among other issues).[2] *Busey*, 747 A.2d at 1164 n. 12 (quoting *Drew*, 118 U.S.App. D.C. at 16, 331 F.2d at 90). The defendant's intent must be "genuinely in issue, not merely in the sense that it is an element of the offense, but in the sense that it is genuinely controverted." *Thompson v. United States*, 546 A.2d 414, 422–23 (D.C. 1988) (citations omitted). "[W]here intent is not controverted in any meaningful sense, evidence of other crimes to prove intent is so prejudicial *per se* that it is inadmissible as a matter of law." *Id.* at 423.

■ Emphasizing that he did not testify or put on any witnesses, Riley argues that he did not open the door to other crimes evidence by contesting intent in a meaningful way. In her opening statement, however, Riley's defense counsel "expressly contest[ed] intent." *See Jefferson v. United States*, 587 A.2d 1075, 1078 (D.C. 1991) (observing that a defendant genuinely may contest intent through an opening statement); *accord*, *Thompson*, 546 A.2d at 423–24 and 423 n. 16; *Landrum v. United States*, 559 A.2d 1323, 1328 (D.C. 1989). Counsel stated that Riley did not aid and abet Bell, and thus was not guilty, because "[h]e did not know that Thomas Bell was going to rob the Payless that day." Counsel explained that Riley was

taken by "surprise[ ]" when Bell jumped in his car, held a gun on him, and forced him to drive away. [*Id.*] According to his counsel's opening statement, Riley was "[u]nsure of what Mr. Bell was capable of or what he was doing," had "made a mistake" in befriending Bell, and "was duped by Thomas Bell that day." These statements, which made it clear that Riley's knowledge and intent would be the central and very much controverted issues for the jury to resolve,[3] satisfied the *Thompson* threshold for admitting other crimes evidence in the government's case-in-chief under the intent exception.

Riley argues, however, that it was the government, not the defense, that made an issue of his intent, when it brought up as part of its case-in-chief the account that Riley gave to the police at the time of his arrest. In that account, which the prosecutor summarized in his opening statement, Riley told the police that a man he did not know[4] had jumped in his car without warning, brandished a gun, and compelled him to drive off. Riley contends that once the government introduced his story of duress as part of its evidence, he merely sought to incorporate it into his general denial that he was Bell's accomplice. In essence, Riley argues that the prosecution should not be permitted to use

---

**2.** The admission of other crimes evidence is also subject to other requirements. "[O]ur cases have held that the defendant's commission of the other crime must be established preliminarily by clear and convincing evidence (unless it has already been established by an adjudication in a separate proceeding); that otherwise admissible *Drew* evidence should nonetheless be excluded if the trial judge finds that the danger of unfair prejudice that it poses substantially outweighs its probative value, *see Johnson v. United States*, 683 A.2d 1087, 1092–93 (D.C.1996); and that when admitting *Drew* evidence, the trial judge should give a limiting instruction, *id.* at 1097 n. 10." *Busey*, 747 A.2d at 1164 n. 13. The trial judge in this case paid careful heed to

these requirements, for example, by holding a hearing outside the presence of the jury to assess the strength of the other crimes evidence, by restricting the government's proof, and by carefully instructing the jury on its consideration of the evidence.

**3.** In closing argument, defense counsel asked the jury to conclude that "Mr. Riley is not involved and didn't know that Thomas Bell would rob or did rob Payless Shoe Store on March 22nd."

**4.** At trial Riley's counsel acknowledged that he in fact was acquainted with Bell.

its own elevation of intent into a controverted issue as the predicate for the admission of otherwise precluded (because highly prejudicial) other crimes evidence.

We are not persuaded by this argument. Riley's intent to aid and abet Bell was an element of the charged offense which the government bore the burden of proving, like any other element, beyond a reasonable doubt. As part of its effort to shoulder that burden, the government was entitled to prove in its case-in-chief that Riley made false exculpatory statements to the police that evinced consciousness of guilt. *See Nelson v. United States,* 601 A.2d 582, 595 (D.C.1991). This evidence did not make Riley's intent a controverted issue at trial, and by itself, it did not render the other crimes evidence admissible under the intent exception.[5] It then remained up to Riley either to "fight or fold" on the issue of intent. As one would expect in an aiding and abetting case in which the other elements of the crime were virtually beyond dispute, Riley opted to fight. In doing so, he made his intent a matter of genuine controversy, and the trial court did not err in ruling that he opened the door to the other crimes evidence offered by the government.

Appellant's conviction is affirmed.

*So ordered.*

---

5. Thus, in a preliminary ruling prior to hearing the defense opening statement, the trial court permitted the prosecutor to mention in his opening that Riley had been stopped in a car with Bell a month before he told the police, after the Payless robbery, that he did not know Bell, but not that the earlier stop was for another robbery.