Marquette MUSCHETTE, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–1428.

District of Columbia Court of Appeals.

Argued June 29, 2006.
Decided Sept. 13, 2007.

Ferris R. Bond, Washington, District of Columbia, for appellant.

Kathleen J. Monaghan, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Thomas J. Tourish, Jr., and Blanche L. Bruce, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, GLICKMAN, and KRAMER, Associate Judges.

KRAMER, Associate Judge:

The appellant, Marquette Muschette, is challenging his convictions, following a jury trial, of second-degree murder, possession of a firearm during a crime of violence (PFCOV), and carrying a pistol without a license (CPWL). He asserts two main claims of error: (1) the trial court erred in finding that evidence of his prior bad acts was admissible and (2) the trial court erred in refusing to give the defense-of-a-third-party instruction. We affirm the appellant's convictions.

**I**

Muschette was indicted with his co-defendant Melvin Clark on charges of first-degree murder, felony murder while armed, attempted robbery while armed, CPWL and three counts of PFCOV.

These charges stemmed from the July 30, 2001, shooting death of the decedent, Demetrius Cunningham, which occurred in the 2900 block of Eighth Street in the southeast quadrant of the District.

According to the government's evidence at trial, several weeks prior to the shooting, Jerome Proctor, Muschette's cousin, got into a fistfight in his neighborhood, the 2900 block of Eighth Street, Southeast, with a man named Rechard Waldo. After the fight was broken up, Proctor sought out Muschette's help in defending against Waldo.[1] Proctor got in his car and drove to where Muschette lived, near Park Road and Morton Street in the Northwest quadrant of the District. Proctor located Muschette, who agreed to help, and the two returned back to the area where the fight occurred. After Proctor identified Waldo, Muschette approached Waldo, pulled a gun[2] and warned Waldo not to mess with his family.

About a week and a half after the fight, Proctor and Waldo reconciled their differences and put an end to their conflict. Although Proctor agreed to stop feuding with Waldo and informed Muschette of this, Proctor was still angry at Waldo. As a result, Proctor informed Muschette that Waldo was a drug dealer, that he kept a lot of money on him, and that he was usually out on the street late at night. In response, Muschette allegedly told Proctor that he was "going to come around there and take [Waldo's] money."

A few weeks after Proctor and Waldo's fight, at approximately 10:30 p.m., Muschette was near Morton Street when he saw an acquaintance from the neighborhood, Robert Lewis, who gave rides in his van to people he knew in exchange for money. Muschette asked Lewis for a ride to the Southeast quadrant of the city, and Lewis agreed. Lewis had also agreed to give another person, Melvin Clark, a ride that night, and Clark was already in Lewis' van by the time Muschette got in.

Lewis drove to Martin Luther King Avenue, Southeast, and Muschette instructed him to turn off into an alley. Once there, Lewis stopped the van and Muschette and Clark exited. A few minutes thereafter, Muschette and Clark walked past Cunningham, Waldo, and Waldo's cousin, who were sitting in a car, smoking marijuana. Muschette walked up to the three men while Clark hung behind. Muschette approached Waldo's cousin first and asked if he had any marijuana to sell. He responded that he did not. Muschette then asked Cunningham and Waldo the same question, and they also said that they had no marijuana to sell. According to Waldo, after Muschette stepped away, he muttered an epithet and started shooting a gun at the men. Waldo dropped to the ground and saw Muschette and Cunningham exchanging gunfire.[3] After the firing ceased, Waldo discovered that Cunningham had been shot in the thigh and abdomen. Cunningham died later that night as a result of his wounds.

At trial, Muschette presented no evidence. Clark testified that he and Muschette separately asked Robert Lewis for a ride that night and that Clark wished to go to his mother's house off of Southern Avenue in Maryland. Once they had

---

1. According to Proctor, Waldo threatened to go and get a gun after the fight ended, and so Proctor, who testified that he did not have access to guns, sought out his cousin who did have access to firearms.

2. Proctor testified that he was not certain what type of gun Muschette had, but that "it looked like a .38 [caliber], maybe a[ ]9[millimeter]."

3. Waldo testified that he never saw Clark shooting a gun.

pulled into the alley at Muschette's direction, he said that he wanted Clark to meet his cousin, who allegedly lived in the neighborhood where the van was parked. Clark claimed that he was uncomfortable being in that area, so Muschette gave him one of the two guns he was carrying that evening for protection. The two men walked out of the alleyway where the van was parked and down the block, but Muschette was unable to find his cousin. On the way back to the van, Muschette stopped to purchase some marijuana. Clark testified that, at that point, he "turned to walk away .... [and] heard a shot.... [He] ducked down and turned around to see what was going on." What he saw was Waldo and Muschette exchanging fire. Clark ducked down behind a car and saw Cunningham "in the middle of the street pulling a gun out of his waist .... [and][h]e started firing at [Muschette]." Moments later, Muschette turned and started running toward Clark and, as a result, Cunningham's fire became directed at Clark. When Clark saw that Cunningham "was firing towards [his] direction, [he] pulled the gun out and fired back."

Muschette and Clark ran back through the alley to the van where Lewis was waiting. Clark took his gun into the van with him, and Lewis threw it out of the driver's side window.[4] Muschette urged Lewis to depart quickly from the area, but they were stopped by police before Lewis could back the van out of the alleyway. Clark and Lewis exited the vehicle as they were instructed to do by a police officer, but Muschette ran from the van and fled. He was arrested several days later.

Muschette and Clark were tried together in a jury trial. At a pretrial hearing, the trial court heard argument on the government's notice to introduce evidence of Muschette's uncharged criminal conduct. The government argued that the evidence of Muschette's threats to Waldo following the fight with Proctor and his statement that he wanted to rob Waldo was necessary to provide context for the charged crimes and to disprove his self-defense claim. Defense counsel generally opposed the introduction of this evidence.[5] The trial court granted the government's request to admit this evidence, finding that it was relevant to meet Muschette's claim of self-defense.

The government put on several witnesses at trial, including several police officers, a medical examiner, Lewis, Proctor, and Waldo. After the government completed its case, defense counsel moved for a judgment of acquittal on all of the counts in the indictment. The trial court granted the motion with respect to the attempted robbery, felony murder, and two PFCOV charges, finding that they were not supported by the evidence.

After the close of the evidence, the trial court discussed jury instructions with the parties. The government specifically requested that the jury be instructed that "[o]ne who deliberately puts himself/herself in a position where s/he has reason to believe his/her presence will provoke trouble cannot claim self-defense." See Criminal Jury Instructions for the District of Columbia, No. 5.16B (4th ed.1993). Muschette's counsel objected "for the record," indicating that he did not think that the instruction was applicable to this case.

---

**4.** A firearms expert testified that the two guns recovered near the van were nine millimeter, semi-automatic handguns.

**5.** Muschette's counsel first argued that this evidence was impermissible under *Drew, in-*

*fra,* which the trial court immediately rejected. Counsel then disputed whether the evidence was permissible pursuant to *Johnson, infra.*

Muschette's counsel requested the instruction for defense of a third person, Criminal Jury Instructions for the District of Columbia, No. 5.19 (4th ed.1993), arguing that the evidence showed from "Mr. [Muschette's] standpoint, he, in firing, was defending Mr. Clark."

On the following day, the trial court notified the parties of the approved jury instructions, which included the self-defense instruction but omitted that for defense of a third party. Muschette's counsel requested that the trial court add the language "or acting in the defense of another" onto the end of the standard self-defense instruction. The court denied the request, finding that it was not supported by the evidence.

After closing arguments, the jury retired to deliberate and thereafter returned its verdict convicting Muschette of second-degree murder as a lesser-included offense of first-degree murder, PFCOV and CPWL.[6] Muschette was sentenced to twenty-eight years of imprisonment with five years of supervised release for second-degree murder, thirteen years of imprisonment with three years of supervised release for PFCOV and three years imprisonment with three years of supervised release for CPWL, all to run concurrently.

## II

### A.

■ Muschette's first claim for reversal is that the trial court erred in finding that the evidence of prior bad acts was admissible, specifically because (a) the admission of this evidence violated *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), (b) there was no finding by the trial court of clear and convincing evidence that the prior crimes had occurred, and (c) the

evidence was more prejudicial than probative. We review decisions on the admissibility of evidence, including those for prior bad acts, for abuse of discretion. *Hammond v. United States,* 880 A.2d 1066, 1095 (D.C.2005) (quoting *Plummer v. United States,* 813 A.2d 182, 188 (D.C. 2002)).

■ It is well-recognized in this jurisdiction that

[E]vidence of one crime is inadmissible to prove disposition to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose.

*Drew, supra,* 118 U.S.App.D.C. at 15–16, 331 F.2d at 89 (footnotes omitted); *see also Jackson v. United States,* 856 A.2d 1111, 1114–1115 (D.C.2004). Evidence otherwise inadmissible under *Drew,* however, is presumptively admissible

[Where the evidence] is relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial.

*Busey v. United States,* 747 A.2d 1153, 1164 n. 12 (D.C.2000) (quoting *Drew, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90). When the prior bad act sought to be introduced under a *Drew* exception has not been "established by an adjudication in a separate proceeding," then it must be es-

---

**6.** The jury was unable to reach a verdict at this point in their deliberations with respect

to Clark, but ultimately convicted him of CPWL. Clark did not appeal that conviction.

tablished by clear and convincing evidence before it may be admitted at trial. *Anderson v. United States,* 857 A.2d 451, 456 (D.C.2004) (quoting *Riley v. United States,* 790 A.2d 538, 540 n. 2 (D.C.2002)); *Busey, supra,* 747 A.2d at 1164 n. 13.

 Not all evidence of prior bad acts, however, is restricted by *Drew. Toliver v. United States,* 468 A.2d 958 (D.C. 1983), established:

> [E]vidence of other crimes .... is admissible when relevant to explain the immediate circumstances surrounding the offense charged.... In fact, this limited class of evidence is not other crimes evidence because it is too intimately entangled with the charged criminal conduct. Evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an extrinsic offense within the meaning of [other crimes evidence].

*Id.* at 960–961 (internal quotations omitted). In *Johnson v. United States,* 683 A.2d 1087 (D.C.1996) (en banc), we further held:

> *Drew's* strictures do not come into play in every instance in which evidence offered to prove guilt of the charged offense could be offered in support of a prosecution of another crime. Specifically, *Drew* does not apply where such evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context.

*Id.* at 1098. Any prior bad act evidence admissible under either *Toliver, Johnson,* or a *Drew* exception, however, may still "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* at 1099.

 We conclude that the prior bad act evidence in this case was not admitted in violation of *Drew* and was properly admitted pursuant to the dictates of *Johnson.* In applying *Johnson,* we have held that "an accused person's prior possession of the physical means of committing the crime is some evidence of the probability of his guilt, and is therefore admissible." *Busey, supra,* 747 A.2d at 1165 (quoting *Coleman v. United States,* 379 A.2d 710, 712 (D.C.1977)); *Thomas v. United States,* 685 A.2d 745, 749 (D.C.1996) (quoting *Parker v. United States,* 586 A.2d 720, 724 (D.C.1991)). Testimony showed that, several weeks prior to the events in question, Muschette threatened Waldo with a gun that resembled the weapon used in the shooting. That evidence demonstrated that he possessed the means to commit the crime charged. Based on well-established law in this jurisdiction, the testimony regarding Muschette's prior gun possession was therefore properly admitted as direct evidence of the crime. *See Gamble v. United States,* 901 A.2d 159, 170–171 (D.C. 2006); *Sanders v. United States,* 809 A.2d 584, 590 (D.C.2002).

 It was also not an abuse of discretion for the trial court to admit evidence that, in the weeks prior to the shooting, Muschette expressed an intent to rob Waldo. We have recognized that "the threats of an accused person are admissible to show his doing of the deed threatened." *Wilson v. United States,* 690 A.2d 468, 469 (D.C.1997). At the time the evidence was admitted, Muschette was charged with attempted robbery, and thus Proctor's testimony that Muschette wished to rob Waldo qualified as direct evidence of the charge. We conclude that the evidence regarding the prior bad acts in this case was "not independent or unrelated to the charged

crime," *Busey, supra,* 747 A.2d at 1164–1165, and deny Muschette's claim for reversal on these grounds.[7]

Moreover, the evidence of Muschette's prior gun possession and his prior threat to Waldo was directly relevant to placing the crime in context. Without that testimony, the murder would have appeared as an isolated incident that occurred at a random location amongst strangers. There was no evidence that Muschette knew Cunningham or had any reason to confront or shoot him. And there was no other evidence that Muschette had been to or was otherwise familiar with the 2900 block of 8th Street, or the adjacent alley that provided the ingress and egress to commit the crimes charged.[8]

 Nor was the admission of the prior bad acts evidence substantially more prejudicial than probative. The testimony regarding the prior bad acts was probative in proving the government's case by negating Muschette's claim of self-defense and placing the shooting in context. The evidence gave the jury a broader perspective of Muschette's involvement with Waldo and demonstrated Muschette's possession of the weapon used in the shooting. Muschette does not identify any substantial reason why the evidence was unduly prejudicial. We therefore hold that the trial court did not abuse its discretion in admitting evidence of Muschette's prior bad acts.

## B.

 Muschette also argues that his convictions should be reversed because the trial court erred in not instructing the jury on defense of a third party, that is, that Muschette shot in order to defend Clark. We disagree. In reviewing claims of instructional error, we view the evidence in the light most favorable to the defendant in order to ascertain whether there " 'exists evidence sufficient for a reasonable jury to find in his favor.' " *Bonilla v. United States,* 894 A.2d 412, 417 (D.C.2006), (quoting *Adams v. United States,* 558 A.2d 348, 349 (D.C.1989)). A trial court "may properly refuse to give [a defendant's requested] instruction where no factual or legal basis for it exists," *Hernandez, supra,* 853 A.2d at 205 (quoting *Frost v. United States,* 618 A.2d 653, 662–663 n. 9 (D.C.1992)), but a defendant is generally "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Bonilla, supra,* 894 A.2d at 417 (quoting *Adams v. United States,* 558 A.2d 348, 349 (D.C.1989)). This evidentiary burden is not an onerous one, and an instruction is required when it is "supported by any evidence, however weak." *Hernandez, supra,* 853 A.2d at 205 (quoting *Graves v. United States,* 554 A.2d 1145, 1147 (D.C.1989)).

 A defendant may claim defense of a third party where "the third party was the innocent victim of an unlawful attack," or, in other words, where "the

---

**7.** Muschette's argument that the trial court erred in failing to find that the prior bad acts occurred by clear and convincing evidence must similarly fail. We conclude that the evidence here was not prohibited by *Drew* and thus the requirement that the "commission of the other crime must be established preliminarily by clear and convincing evidence" is inapplicable. *Anderson v. United States,* 857 A.2d 451, 456 (D.C.2004) (quoting *Riley v.*

*United States,* 790 A.2d 538, 540 n. 2 (D.C. 2002)).

**8.** The direct relevance of this evidence is further illustrated by the fact that, despite the dismissal of attempted robbery related charges at the conclusion of the government's case, the government was able to utilize this evidence in its closing argument without objection from Muschette's counsel.

victim of the attack was himself entitled to the defense of self-defense." *Fersner v. United States,* 482 A.2d 387, 390 n. 3 (D.C. 1984) (quoting *Taylor v. United States,* 380 A.2d 989, 994 (D.C.1977)). The defendant must have "reasonably believed and actually believed that [the victim] himself had a right of self-defense," and the focus of the inquiry is on the defendant's "reasonable perceptions of the situation," not that of the third party. *Frost, supra,* 618 A.2d at 661 (quoting *Fersner, supra,* 482 A.2d at 390; *Graves, supra,* 554 A.2d at 1147). In using deadly force, the defendant must have "actually and reasonably believed that [the victim] was in imminent danger of death or bodily harm." *Id.* (citing *McPhaul v. United States,* 452 A.2d 371, 373 (D.C.1982)). The victim's perception of the situation, however, is still relevant "to determine what the intervenor's perceptions actually and reasonably were." *Fersner, supra,* 482 A.2d at 392; see *Graves, supra,* 554 A.2d at 1149.

The trial court found that there was insufficient evidence to support Muschette's requested third party defense instruction, and we agree with the trial court's assessment of the evidence. All of the available evidence showed that Clark was physically removed from Muschette's interaction with Waldo and Cunningham. Waldo testified that the other person with Muschette that night had stepped away from him from the time he went to purchase drugs and was not near him when the shooting began. Clark corroborated this, stating that he turned his back and walked away from Muschette when he first went to buy drugs and that he was not near him when shots were fired.

Furthermore, there was nothing in the evidence to suggest that Clark was in danger sufficient to warrant self-defense when Muschette began firing his gun. By both Waldo's and Clark's accounts, Clark was not near Muschette, Waldo, and Cunningham when the shooting began. It was only when Muschette began fleeing and running toward Clark that Clark felt he was in danger and fired his gun; it was Muschette who placed Clark at risk by running toward him and directing gunfire in Clark's direction. We therefore conclude that there is insufficient evidence to support that Muschette reasonably and actually believed that Clark was the innocent victim of an unlawful attack when Muschette fired his gun, and the trial court did not err in refusing to give the defense of a third party instruction.[9] Accordingly, for the reasons stated herein, Muschette's convictions are hereby

*Affirmed.*

9. Muschette also argues that the trial court erred in instructing the jury that a defendant may not claim self-defense where he was the first aggressor or where he deliberately placed himself in a position where he reasonably believed his presence would provoke trouble. But that instruction was supported by ample evidence in the record, including Muschette's previous act of pulling a gun on Waldo and warning him not "to mess" with his family; his statement to Proctor that he was "going to come around there and take [Waldo's] money;" as well as his decision to go into an area where conflict with Waldo had previously occurred and to do so carrying two guns, as Clark testified. Thus, we conclude that the trial court did not err in giving this instruction.