**Kevin A. HERRINGTON, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 07–CF–98.**

District of Columbia Court of Appeals.

Argued Sept. 30, 2009.

Decided Nov. 4, 2010.

Christine A. Monta, Public Defender Service, with whom James Klein, Alice Wang and Joshua Deahl, Public Defender Service, were on the brief, for appellant.

Stephan E. Oestreicher, Jr., Special Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Before GLICKMAN and FISHER, Associate Judges, and WAGNER, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Kevin Herrington was convicted in 2006 of unlawful possession of ammunition (UA), in violation of D.C.Code § 7–2506.01 (2001) (now § 7–2506.01(a) (Supp. 2010)). His conviction was based solely on evidence that he possessed handgun ammunition in his home. Subsequently, in *District of Columbia v. Heller*,[1] the Supreme Court held that the District's general ban on possession of usable handguns in the home violated the Second Amendment. As a corollary of that holding, ap-

1. 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

pellant argues, his conviction under the UA statute for simply possessing handgun ammunition in the home also violates the Second Amendment. We agree, and because the error in applying the UA statute to appellant is plain on the existing record, we reverse his conviction.

## I.

Appellant was standing on the sidewalk outside his home on the afternoon of November 1, 2005, when two police officers, mistaking him for someone under a court order to stay away from the neighborhood, drove up and asked to speak to him. Appellant ignored the request and went into his house. A short time later, the officers saw appellant leave his house on a bicycle. They pursued·him in their police cruiser. After turning a corner, appellant got off his bike and ran back to his house. As he ran, according to the officers, appellant withdrew a black handgun and pointed it at them. At one point appellant stumbled and dropped something, which the officers initially thought was the gun, but which turned out to be a black baseball cap.

Appellant entered his house, which soon was surrounded by police. After a while, appellant emerged, surrendered, and was placed under arrest. Appellant's mother then permitted the police to search the house. In a heating vent in appellant's bedroom, the police discovered two boxes of ammunition—one containing .380–caliber rounds and the other containing 9–mm. rounds. Appellant's fingerprints were on the .380–caliber ammunition box.[2]

The ensuing indictment charged appellant with two counts of assault on a police officer while armed (APOWA), two counts of assault with a dangerous weapon (ADW), one count of possession of a fire-

arm during a crime of violence (PFCV), and one count of unlawful possession of ammunition (UA). The government dismissed the ADW counts before trial.

At the close of the government's case, appellant moved for a judgment of acquittal on the UA count, arguing that the evidence was insufficient to convict him of violating D.C.Code § 7–2506.01 because the prosecution had failed to prove that he lacked a valid registration certificate for a firearm of the same gauge or caliber as the ammunition recovered from his bedroom. · The trial court denied the motion, agreeing with the prosecutor that all the government needs to prove to obtain a UA conviction are "that the defendant possessed ammunition, and that he did so knowingly and intentionally." The court so instructed the jury at the close of the trial.

The jury acquitted appellant of the APOWA and PFCV charges. It found him guilty only of UA.

## II.

What is now subsection (a) of D.C.Code § 7–2506.01 provides as follows:

No person shall possess ammunition in the District of Columbia unless:

(1) He is a licensed dealer pursuant to subchapter IV of this unit;

(2) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3) He is the holder of the valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses; except, that no such person shall possess restricted pistol bullets; or

---

**2.** Elsewhere in the house, the police found a black BB gun. Fingerprints lifted from the gun did·not match appellant's, and the offi-

cers who pursued him could not identify the BB gun as the weapon he allegedly pointed at them.

(4) He holds an ammunition collector's certificate on September 24, 1976.

In *Logan v. United States*,[3] we rejected the argument that the government bears the burden of proving the absence of an appropriate firearm registration certificate (or the absence of any of the other enumerated exceptions) as "an essential element of the offense" of UA.[4] The structure of the statute, we explained, "makes clear that possession of ammunition is presumptively unlawful," and that "the failure to meet one of the conditions defining a lawful possessor is not a descriptive part of the offense."[5] Thus, we held, "the government is required to prove only that [the accused] possessed ammunition ... in order to establish the essential element of the offense."[6] The four statutory exceptions, including the registrant exception in paragraph (3), define affirmative defenses; "and when 'a defendant interposes an affirmative defense such as an exception in a statute, it is the burden of the defendant to bring himself within the exception rather

than that of the prosecutor to negative it.' "[7] In short, we held in *Logan* that the burden of persuasion with respect to any of the four exceptions is on the defendant, not on the prosecution.[8]

The trial court properly adhered to *Logan* in denying appellant's motion for judgment of acquittal. Consequently, the government was able to convict appellant of UA merely by proving that he possessed handgun ammunition in his own home,[9] without any evidence that he lacked a valid registration certificate for a corresponding firearm.

Appellant argues that his conviction must be reversed because "the right of the people to keep and bear Arms" recognized in the Second Amendment [10] encompasses the possession of handgun ammunition in the home, and the UA statute unconstitutionally criminalizes all such possession without requiring proof that the accused was disqualified from exercising his Second Amendment rights by his failure to comply with valid registration and licens-

**3.** 489 A.2d 485 (D.C.1985).

**4.** *Id.* at 492.

**5.** *Id.* at 492–93.

**6.** *Id.* at 493.

**7.** *Id.* (quoting *Middleton v. United States*, 305 A.2d 259, 261 (D.C.1973)). *See also* BARBARA E. BERGMAN, CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 6.505 cmt. (5th ed. rev. 2009) ("The government does not have the burden of proving that a defendant is *not* a licensee, an authorized government officer, agent or employee, a registrant of firearms of the same caliber as the ammunition possessed, or a certified dealer.") (citing *Logan*, 489 A.2d at 492–93).

**8.** Contrary to its position in the trial court, the government argues on appeal that the exceptions in the UA statute merely impose on the defendant a burden to produce evidence putting the defense in issue rather than the ultimate burden of persuasion. We disagree.

That is not how we construed the statute in *Logan*, nor is it how the statute has been understood since then. See *supra* note 7. While the government always bears the ultimate burden of persuasion on each element of a charged offense, *see, e.g., In re Warner*, 905 A.2d 233, 241–42 (D.C.2006), *Logan* held that non-existence of a statutory exception is not an element of UA.

**9.** Although there was no testimony at trial as to whether the .380–caliber and 9–mm. rounds found in appellant's bedroom could be used in handguns, the government implicitly concedes that fact. We have mentioned such use in prior cases. *See, e.g.; Muschette v. United States*, 936 A.2d 791, 795 n. 4 (D.C. 2007) ("A firearms expert testified that the two guns recovered near the van were nine millimeter, semi-automatic handguns."); *Gamble v. United States*, 901 A.2d 159, 164 (D.C.2006) (police officer "reached into Gamble's coat pocket and seized a .380 caliber pistol").

**10.** U.S. CONST. amend. II.

ing requirements or by any other reason. In other words, appellant contends, the UA statute is unconstitutional—if not in all its applications, then at least as applied to him in this prosecution.

 Because appellant did not raise this Second Amendment claim at trial, it is "subject to the strictures of 'plain error' review." [11] To survive such scrutiny, appellant must show (1) an "error" (2) that is "plain," and (3) that affected his "substantial rights." [12] "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." [13] We consider these requirements in turn.

### A. The "Error"—Unconstitutionality of the UA Statute as Applied to Appellant

 In *Heller*, the Supreme Court held that the Second Amendment protects an individual right to keep and bear arms for purposes of self-defense. The Court subsequently held this right to be "fundamental"—necessary to our system of ordered liberty and deeply rooted in the history and traditions of our Nation—and hence incorporated in the concept of due process (and enforceable against state as well as federal limitations on the possession and use of "arms"). [14] The right to keep and bear arms is presumptively enjoyed by all American citizens ("the people" [15]), though some individuals may be disqualified from exercising it because they cannot satisfy, or have not complied with, valid regulatory conditions. [16] In view of the fundamental nature of the right, however, any restrictions on its exercise are subject to heightened judicial scrutiny. [17]

 The Second Amendment right is "not a right to keep and carry any weapon

11. *Thomas v. United States*, 914 A.2d 1, 8 (D.C.2006).

12. *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

13. *Id.* (quoting *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544).

14. *McDonald v. City of Chicago*, — U.S. —, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

15. U.S. Const. amend. II.

16. *See, e.g., McDonald*, 130 S.Ct. at 3047 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' ") (quoting *District of Columbia v. Heller*, 554 U.S. 570, —, 128 S.Ct. 2783, 2816–17, 171 L.Ed.2d 637 (2008)).

17. *Heller* did not specify the precise level of scrutiny for evaluating restrictions on the exercise of Second Amendment rights, though it rejected a "rational-basis" test as insufficiently stringent for a specifically-enumerated constitutional right. *See Heller*, 554 U.S. at —, 128 S.Ct. at 2817 n. 27; *cf. id.*, 554 U.S. at —, 128 S.Ct. at 2851–52 (Breyer, J., dissenting). In *Brown v. United States*, 979 A.2d 630, 640–41 (2009), we noted that some courts had deemed "intermediate scrutiny" to be the appropriate standard of review. "To withstand intermediate scrutiny, a governmental restriction 'must be substantially related to an important governmental objective.' " *Id.* at 641 (quoting *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988)). *McDonald's* holding that the Second Amendment right is fundamental may mean that "strict scrutiny" of any substantial restriction is mandated. *See generally* 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 15.5, at 791 (4th ed. 2007) ("Although the Supreme Court has not been clear in defining the standard of review used in fundamental rights cases, it most commonly states that any significant impairment of a

whatsoever in any manner whatsoever and for whatever purpose." [18] But it does encompass a right to keep ordinary handguns in the home for use in self-defense. *Heller* specifically held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." [19] The latter prohibition, derived from a District statute requiring lawfully-possessed firearms to be kept "unloaded and disassembled or bound by a trigger lock or similar device," [20] was unconstitutional because it made it "impossible for citizens to use [their handguns] for the core lawful purpose of self-defense." [21]

■ In neither *Heller* nor *McDonald* did the Supreme Court directly address restrictions on the possession of ammunition *per se.* (The District's requirement that lawfully-maintained firearms be kept *unloaded* was not challenged in *Heller.*) Nonetheless, from the Court's reasoning, it logically follows that the right to keep and bear arms extends to the possession of handgun ammunition in the home; for if such possession could be banned (and not simply regulated), that would make it "impossible for citizens to use [their handguns] for the core lawful purpose of self-defense." [22] By the same token, given the obvious connection between handgun ammunition and the right protected by the Second Amendment, we are hard-pressed to see how a flat ban on the possession of such ammunition in the home could survive heightened scrutiny of any kind. We therefore conclude that the Second Amendment guarantees a right to possess ammunition in the home that is coextensive with the right to possess a usable handgun there. The government has not taken issue with that conclusion.

■■ As we discussed, the UA statute makes it a crime to possess ammunition of any kind anywhere, regardless of its use or purpose; and the prosecution may obtain a conviction under the statute without having to prove that the possessor violated any registration, licensing or regulatory requirement or was otherwise disqualified from exercising his Second Amendment right. A UA conviction therefore may be based solely on proof that the defendant possessed handgun ammunition in his home—solely, that is, on proof of conduct protected by the Second Amendment. In a prosecution such as this one, where nothing more was proved at trial to show that the defendant was disqualified from exercising his Second Amendment rights— there was no evidence, for example, that he possessed the ammunition for an illegal purpose [23] or that he had failed to comply with applicable registration requirements

---

fundamental constitutional right will be invalid unless the government demonstrates that the law, or the classification, is narrowly tailored to promote a compelling or overriding interest," the standard formulation of "strict," as opposed to "intermediate," scrutiny.).

18. *Heller*, 554 U.S. at ——, 128 S.Ct. at 2816.

19. *Id.*, 554 U.S. at ——, 128 S.Ct. at 2821–22.

20. D.C.Code § 7–2507.02 (2001). In *Heller's* wake, the statute was revised. *See id.* § 7–2507.02 (Supp.2010).

21. *Heller*, 554 U.S. at ——, 128 S.Ct. at 2818.

22. *Id.*

23. *Cf. Howerton v. United States*, 964 A.2d 1282, 1287 (D.C.2009) (holding that trial court did not plainly err in rejecting appellant's claim that his possession of a handgun in his home was protected by the Second Amendment, where appellant had used the handgun to assault his girlfriend and there was no evidence that he had possessed the weapon for purposes of self-defense).

for a firearm corresponding to the ammunition[24]—the UA statute is unconstitutional as applied.[25]

▮ In light of the constitutionally-protected nature of the conduct addressed by the UA statute, its provision of an affirmative defense if the accused had registered a corresponding firearm only compounds the problem. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[26] While legislatures do have leeway to reallocate burdens of proof so as to require the accused to prove some facts as affirmative defenses (rather than requiring the prosecution to negate those facts as an element of the offense), "there are obviously constitutional limits beyond which [a legislature] may not go in this regard."[27] Where the Constitution—in this case, the Second Amendment—imposes substantive limits on what conduct may be defined as a crime, a legislature may not circumvent those limits by enacting a statute that presumes criminality from constitutionally-protected conduct and puts the burden of persuasion on the accused to prove facts necessary to establish innocence.[28] That, however, is precisely what

---

24. Thus, we do not address in the present case a challenge to a UA conviction based on the incompatibility of the District's particular registration requirements with the Second Amendment. See Plummer v. United States, 983 A.2d 323 (D.C.2009) (as amended on denial of rehearing and rehearing en banc, May 20, 2010) (holding it impermissible to convict a person of possessing an unregistered handgun in the home at a time when the District's unconstitutional ban made registration of a handgun impossible, unless the person was disqualified from registering the handgun for constitutionally permissible reasons); Lowery v. United States, 3 A.3d 1169 (D.C.2010) (denying relief otherwise available under Plummer where the Second Amendment claim was not preserved at trial and the record did not show appellant would have been able to register a handgun but for the unconstitutional ban); but see id. at 1178–79 (Glickman, J., dissenting in part). Although the present case is also a plain error case like Lowery, it is distinguishable from that case. Unlike here, in Lowery the government made a prima facie showing that the defendant was disqualified from exercising his Second Amendment rights—it proved that Mr. Lowery lacked a valid registration certificate for his firearm—and, unlike here, the record in Lowery consequently did not show that the statutory prohibition had been applied unconstitutionally to the defendant.

25. We express no opinion as to whether the UA statute is constitutional in other applications (e.g., as applied to possession of handgun ammunition outside the home or for an improper purpose, or possession of non-handgun ammunition), or whether it is unconstitutional on its face. "To succeed in a typical facial attack, [appellant] would have to establish 'that no set of circumstances exists under which [the statute] would be valid,' United States v. Salerno, 481 U.S. 739, 745 [107 S.Ct. 2095, 95 L.Ed.2d 697] (1987), or that the statute lacks any 'plainly legitimate sweep,' Washington v. Glucksberg, 521 U.S. 702, 740, n. 7 [117 S.Ct. 2258, 138 L.Ed.2d 772] (1997) (Stevens, J., concurring in judgments)." United States v. Stevens, — U.S. ——, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (parallel citations omitted); see also Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449–51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). Cf. Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (striking down Texas statute making it a crime for two consenting adults of the same sex to engage in certain intimate sexual conduct in private).

26. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

27. Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

28. See id. at 207–08, 97 S.Ct. 2319 (stating that Due Process Clause permits a state to create affirmative defenses and place the burden of persuasion on the defendant if the charged crime "otherwise is within its constitutional powers to sanction by substantial

the UA statute (as we construed it in *Logan*) does with respect to the possession of handgun ammunition in the home, by making the defendant's compliance with the registration condition an affirmative defense.

 The limited nature of our holding should be understood. The Second Amendment permits the District to condition the lawful possession of handgun ammunition in the home on the possession of a valid registration certificate for a corresponding handgun (so long as the registration scheme is constitutional).[29] While

*Logan* held as a matter of statutory interpretation that proper registration is an affirmative defense to UA, the prosecution may assume the burden of charging and proving beyond a reasonable doubt that the defendant lacked the necessary registration in order to satisfy the Second Amendment.[30] By doing so, the prosecution would establish that the defendant indeed was disqualified from exercising his Second Amendment right to possess handgun ammunition in the home.[31] The application of the UA statute to the defendant in such a case would not be unconstitutional.

punishment"). As Professor LaFave explains, *Patterson*

> does not give the legislatures a free hand "to reallocate burdens of proof by labeling" elements as affirmative defenses. The "obvious constitutional limits" to which the majority referred are the various constitutional doctrines which presently exist regarding the way in which crimes may be defined. Thus, if a crime defined by law as consisting of elements *X*, *Y* and *Z* is reformulated by the legislature so as to consist only of elements *X* and *Y*, with non-*Z* now an affirmative defense to be proved by the defendant, this is permissible under *Patterson* if and only if it is constitutionally permissible to make *X* plus *Y*, standing alone, a criminal offense.

1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 1.8(c), at 85 (2d ed. 2003) (footnotes omitted).

29. In *Heller* itself, the Court assumed that the District's registration and licensing provisions could remain in effect (with the elimination of the flat ban on handgun possession in the home). The Court granted relief by directing the District to register the respondent's handgun and to issue him a license to carry it in the home (assuming he was not otherwise disqualified from the exercise of Second Amendment rights). *See* 554 U.S. 570, ——, 128 S.Ct. 2783, 2822, 171 L.Ed.2d 637 (2008).

30. We observed in *Logan* that it is no more difficult for the government to show the defendant's lack of registration than it is for the defendant to show that he complied with the

registration requirement. *Logan v. United States*, 489 A.2d 485, 493 n. 10 (D.C.1985):

31. We note that the other three affirmative defenses enumerated in the UA statute, which permit a person to possess ammunition if he is a licensed dealer, an authorized government employee, or a properly certified ammunition collector, do not "require the defendant to disprove any element of the offense." *Russell v. United States*, 698 A.2d 1007, 1017 (D.C.1997). Consequently, where the government presents a *prima facie* case of possession of ammunition without the necessary firearm registration, *i.e.*, possession outside the protection of the Second Amendment, it is constitutionally permissible for the burden of persuasion with respect to those three affirmative defenses to be placed on the defendant. *See, e.g., Dixon v. United States*, 548 U.S. 1, 8, 17, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (upholding statute requiring that defendant charged with certain firearms offenses prove affirmative defense of duress by a preponderance of the evidence); *Martin v. Ohio*, 480 U.S. 228, 230, 235–36, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (upholding statute requiring defendant to prove self-defense by a preponderance of the evidence).

We also note that *Logan's* holding—that the exceptions in the UA statute are affirmative defenses to be proved by the defendant—poses no constitutional problem in prosecutions for ammunition possession that falls outside the protections of the Second Amendment, such as possession of ammunition for firearms not covered by the right to keep and bear arms.

Because the UA statute was applied unconstitutionally to appellant, the first prong of the plain error test—the presence of error—is satisfied.

### B. "Plainness" of the Error

 To satisfy the second prong of the plain error test, the error must be "clear" or "obvious." [32] "[I]n a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." [33] After *Heller* and *McDonald*, we are satisfied that a flat ban on the possession of handgun ammunition in the home is not just incompatible with the Second Amendment, but clearly so. And on the existing record, the unconstitutionality of appellant's UA conviction is equally clear, as no evidence showing that appellant was disqualified from exercising his Second Amendment right to possess handgun ammunition at home was presented at his trial. He was convicted solely on proof of constitutionally protected conduct. The second prong of the plain error test is satisfied.

### C. The Third and Fourth Prongs of Plain Error Analysis

Convicting appellant solely for possessing handgun ammunition in his home, in violation of the Second Amendment, unquestionably affects his substantial rights.

We also conclude that conviction of a criminal offense on constitutionally insufficient evidence, for conduct "indistinguishable from the mere exercise of [a defendant's] Second Amendment right," [34] seriously impugns the fairness, integrity, and public reputation of judicial proceedings, as well. The government resists the latter conclusion. It argues that there was no miscarriage of justice here because there is no dispute that appellant in fact lacked the legally necessary registration certificate for a handgun corresponding to the ammunition he possessed. (Appellant concedes as much in his brief on appeal.) We are unpersuaded by this argument. We do not doubt that the prosecution could have proved appellant's lack of registration at trial had it wished to do so. But the reason there is no dispute that appellant lacked a handgun registration certificate is that the District's law at the time unconstitutionally forbade the registration of handguns and made it impossible for appellant to register. As appellant rejoins, "[t]o uphold [his] conviction under an unconstitutional statute because he was prevented by a *different* unconstitutional statute from obtaining a registration certificate would be the height of unfairness indeed." [35] It is no answer to say that appellant failed to show at trial that he would have been able to obtain a registration certificate but for the unconstitutional restriction,[36] for the prosecution never put his lack of a certificate in issue at trial.[37]

---

32. *Thomas v. United States,* 914 A.2d 1, 20 (D.C.2006) (quoting *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

33. *Id.* (quoting *Johnson,* 520 U.S. at 468, 117 S.Ct. 1544). *Heller* overruled *Sandidge v. United States,* 520 A.2d 1057, 1058–59 (D.C. 1987), in which we rejected a Second Amendment challenge to the District's firearm registration and licensing laws and held that the Amendment guarantees only a collective rath-

er than an individual right to keep and bear arms.

34. Appellant's Reply Br. at 19 n. 17.

35. *Id.* at 20.

36. *See Plummer v. United States,* 983 A.2d 323 (D.C.2009) (as amended on denial of rehearing and rehearing en banc, May 20, 2010).

37. *Cf. Lowery v. United States,* 3 A.3d 1169 (D.C.2010).

The third and fourth requirements of plain error are met.

## III. Conclusion

Appellant was convicted of unlawful possession of ammunition in violation of the Second Amendment. The error is plain, and it is prejudicial to appellant's substantial rights and to the fairness, integrity, and public reputation of the judicial proceedings. We reverse.

*So ordered.*

FISHER, Associate Judge, concurring in the judgment:

In *Logan v. United States*, 489 A.2d 485 (D.C.1985), this court construed a predecessor statute to mean that "possession of ammunition is presumptively unlawful" and that "the government is required to prove only that appellants possessed ammunition ... in order to establish the essential element of the offense." *Id.* at 493. Today the majority in essence holds that the Supreme Court's decision in *Heller* has altered the elements of the offense in those cases where the evidence shows that the defendant possessed ammunition in his home. In such prosecutions, the government is now required to prove beyond a reasonable doubt that the defendant is not "the holder of [a] valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses...." D.C.Code § 7–2506.01(a)(3). Majority opinion at 1245. (Indeed, as a matter of prudence, the government is well-advised to prove the lack of a valid registration certificate in all prosecutions for unlawful possession of ammunition (UA).)

I agree that, in light of *Heller*, the government failed to prove an essential element of the offense. The evidence being insufficient, appellant's conviction for UA cannot stand.[1] On this basis I concur in the judgment.

---

1. This case is distinguishable from *Lowery v. United States*, 3 A.3d 1169 (D.C.2010), where the government proved all the elements of the offense, including the lack of a valid registration for the firearm, but the appellant asserted that the statute had been unconstitutionally applied to him. On the existing record, Mr. Lowery was unable to carry his burden of establishing plain error. Here, by contrast, it is clear that the government offered no proof to satisfy an essential element of the offense.