HOWARD, Circuit Judge.
Petitioner Aaron Powell was convicted on several state charges including unlawful possession of a loaded firearm, see Mass. Gen. Laws ch. 269, §§ 10(a), (h), (n), and his convictions were affirmed by the Massachusetts Supreme Judicial Court (SJC), see Commonwealth v. Powell, 459 Mass. 572, 946 N.E.2d 114 (2011). Powell then sought federal habeas relief pursuant to 28 U.S.C. § 2254, which was denied by the district court. In this appeal from that denial, he primarily protests the state criminal procedure requirement that a defendant accused of unlawful possession of a firearm bear the burden of producing evidence of a proper license as an affirmative defense. The absence of such proffered evidence gives rise to a presumption during trial that the defendant did not have a valid license; but, if produced, the prose *335 cution has the burden of proving beyond a reasonable doubt that the defense does not exist. See Mass. Gen. Laws ch. 278, § 7; Commonwealth v. Jones, 372 Mass. 403, 361 N.E.2d 1308 (1977). The SJC concluded that this state procedure comports with federal due process, and we hold that Powell has failed to establish that the state court decision conflicts with clearly established Supreme Court precedent. In addition, Powell advances Second Amendment claims, and a related Equal Protection claim. We hold that these claims also provide no basis for disturbing his state convictions. Finally, we deem waived his Sixth Amendment ineffective assistance of counsel claim. Accordingly, we affirm the district court’s denial of his petition for § 2254 relief.
I. Background
We are required to presume that the SJC’s factual rendition is correct and, therefore, we draw our description of the facts from that opinion. 28 U.S.C. § 2254(e); see Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir.2002).
Late one night in August 2008, two Boston police officers were on routine patrol in Roxbury when they noticed a brooding crowd at an intersection. The two dozen or so youths appeared to be aligned into three groups, with two groups on one side of the street and the third on the other side of the street. People were yelling and pointing back and forth at one another, but the crowd grew quiet as the officers drove by in their unmarked cruiser. One officer noticed a young man (later identified as Powell) who was walking nearby but set apart from the groups. Powell looked away when he saw the officers and moved his hands toward his waist in a manner which the officers viewed as consistent with concealing or retrieving contraband. Powell walked past the crowd and then began to run.
A foot chase ensued, and while en route, one officer saw Powell clutching something in his right hand. The officer next saw the handle of a gun in Powell’s hand and twice commanded Powell to drop it. Powell continued to flee, and when attempting to climb a fence to evade the officers, he dropped a .22 caliber revolver to the ground. Powell then ran along the fence and into a darkened garage. He soon emerged with both hands clenched in fists, charging at one of the officers. The officer moved out of the way, Powell knocked into the second officer, and the foot chase continued down the street. The police soon caught up with Powell and arrested him. The loaded revolver was retrieved from where Powell had attempted to scale the fence. Without first issuing Miranda warnings, an officer asked him why he ran and whether he had a license for the firearm. Powell replied that he did not have a firearm.
The Commonwealth of Massachusetts charged Powell with several state crimes. He waived his right to a jury trial and, after a bench proceeding, was convicted of publicly carrying a firearm without a license, Mass. Gen. Laws ch. 269, § 10(a); doing so while the firearm was loaded, id. ch. 269, § 10(n); and possessing ammunition without a permit, id. ch. 269, § 10(h). He was sentenced to eighteen months of incarceration and three years of probation for the firearms and ammunition offenses.[1]
*336 While Powell’s appeal to the state intermediate appeals court was pending, the United States Supreme Court decided McDonald v. City of Chicago, in which it held that the Second Amendment right to keep and bear arms applies to the states through the Fourteenth Amendment. 561 U.S. 742, 130 S.Ct. 3020, 3042, 177 L.Ed.2d 894 (2010). On its own motion, the case was transferred to the SJC, which affirmed Powell’s convictions. See Powell, 946 N.E.2d at 118.
Pertinent here, the SJC rejected Powell’s due process challenge to the Commonwealth’s failure to present evidence that he lacked a firearms license. Id. at 124. Following its own precedent, the court held that the accused has the burden of producing evidence of a license as an affirmative defense in prosecutions for firearms possession and carrying offenses. Id. It also held that this state procedure is in accord with due process because the burden of proving an element of the crime did not shift to the defendant. Id. (relying on Jones, 361 N.E.2d 1308).
In addition, the SJC declined to assess the merits of Powell’s claim that state law age restrictions on young adults’ ability to obtain a license to publicly carry a firearm violate the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment. Id. at 128. The state court viewed his age-based challenges as procedurally barred, essentially because Powell did not demonstrate that his lack of licensure was based on the minimum age requirement alone. Id. at 129-30. The SJC excused Powell’s failure to raise his Second Amendment arguments in a pretrial motion because the issues were not available to him until after McDonald was decided. Id. at 127.
Lastly, the SJC rejected Powell’s ineffective assistance of counsel claim, which was based on trial counsel’s failure to file a motion to suppress Powell’s pre-Miranda statement to the police denying that he had possessed a gun. The court concluded that any allegedly deficient legal representation caused Powell no prejudice due to other evidence of his consciousness of guilt. Id. at 125.
Powell later pursued a § 2254 habeas petition in federal district court, which was denied. Powell v. Tompkins, 926 F.Supp.2d 367 (D.Mass.2013). We consider the merits of the federal habeas petition de novo. See Pena v. Dickhaut, 736 F.3d 600, 603 (1st Cir.2013).
II. Discussion
Securing relief under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) is an onerous task. See Pub.L. No. 104-132, § 104, 110 Stat. 1214, 1218-1219, codified at 28 U.S.C. § 2254; see also White v. Woodall, - U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014); Burt v. Titlow, - U.S. -, 134 S.Ct. 10, 15-16, 187 L.Ed.2d 348 (2013). Powell may secure relief for claims addressed in his direct appeal if the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by” the Supreme Court, 28 U.S.C. § 2254(d)(1). Only legal errors that are objectively unreasonable warrant relief. See Mitchell v. Esparza, 540 U.S. 12, 15-16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (expounding on “contrary to” prong); Tit-low, 134 S.Ct. at 16 (expounding on “unreasonable application” prong); see also Woodall, 134 S.Ct. at 1702, 1706 (emphasizing that “even ‘clear error’ will not suffice” and rejecting an “unreasonable-refus *337 al-to-extend rule” that was discussed in earlier AEDPA cases).
The Supreme Court’s precedent, not that of the circuit courts, serves as the benchmark for securing § 2254 relief. Lopez v. Smith, - U.S. -, 135 S.Ct. 1, 3, 190 L.Ed.2d 1 (2014) (per curiam); see Esparza, 540 U.S. at 16, 124 S.Ct. 7 (noting that a state court need not even be aware of Supreme Court precedents, “so long as neither the reasoning nor the result of the state-court decision contradicts them”). Here, Powell largely rests on In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) in support of his Due Process claim, and on District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) and McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) for his Second Amendment and related Equal Protection claims.
A. Due Process
It is bedrock that the Due Process Clause of the Fourteenth Amendment “protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” Winship, 397 U.S. at 364, 90 S.Ct. 1068. Powell argues that under this command, “a state may not be relieved of proving beyond a reasonable doubt the elements of lack of a firearms license and registration card by imposing a so-called ‘minimal’ burden of production upon the defendant.” Writ large, however, his claim primarily rests on the premise that absence of licensure is an element of the state criminal offense, a position that runs contrary to SJC precedent as exposited in Jones and its progeny. Undeterred, he relies on the text of the operative state statutes, select state case law, and language in his criminal complaint to support his contention that the proper due process analysis must account for absence of license as an operative element of the charged firearms crimes.
To determine the appropriate lens that governs Powell’s due process claim, we begin, as we must, with Massachusetts law. See, e.g., Medina v. California, 505 U.S. 437, 445-46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (addressing state law affirmative defenses); County Court of Ulster County v. Allen, 442 U.S. 140, 156-60, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (addressing state law inferences and presumptions); see also Marshall v. Bristol Superior Court, 753 F.3d 10, 19 (1st Cir.2014) (noting that the federal court is “bound by the state court’s construction of its state statutes and other issues of state law”).
To lawfully possess and carry a firearm within the Commonwealth a person must either obtain a license to do so or be exempt from the normal licensing requirements. See generally Mass. Gen. Laws ch. 140, §§ 121-131P; Hightower v. City of Boston, 693 F.3d 61, 65 (1st Cir.2012) (surveying Massachusetts law). The categories of permits that were available at the time of Powell’s arrest generally consisted of a firearms identification card (FID card), a Class B license, and a Class A license. See, e.g., Mass. Gen. Laws ch. 140, §§ 129B, 129C, 131; see also Hightower, 693 F.3d at 65; Chief of Police of City of Worcester v. Holden, 470 Mass. 845, 26 N.E.3d 715, 721-22 (2015). An FID card permits a qualified person to keep a firearm and ammunition in his home or place of business but does not by itself allow an individual to carry them in public. See Mass. Gen. Laws ch. 140, §§ 129B, 129C; Hightower, 693 F.3d at 66. A Class B license generally permits a person to publicly carry smaller capacity firearms for lawful purposes. See Mass. Gen. *338 Laws ch. 140, § 181(b). The holder of a Class A license has greater privileges and generally may publicly carry larger capacity firearms for lawful purposes that are loaded and concealed. See id. ch. 140, § 131(a); Hightower, 693 F.3d at 66. “[T]he chief of ¡police or the board or officer having control of the police in a city or town, or persons authorized by them,” serve as the state’s licensing authority, Mass. Gen. Laws ch. 140, § 121, and the degree of discretion to grant a permit and to impose any restrictions on permits varies. See, e.g., Mass. Gen. Laws §§ 129B, 129C, 131; Hightower, 693 F.3d at 66 (applicant must be a “suitable person” for a license to publicly carry); Holden, 26 N.E.3d at 723-24, 727-28 (explaining the purpose of the state’s licensing prerequisites, including the “suitable person” qualification).[2]
State law also prescribes criminal penalties for certain unlawful conduct related to firearms. Pertinent here, section 10 of Chapter 269 (“Crimes Against Public Peace”) of the state’s criminal code penalizes the unlawful possession or carrying of particular weapons and ammunition. Mass. Gen. Laws ch. 269, § 10; see generally 2014 Mass. Acts ch. 284, §§ 89-92 (new legislation amending Mass. Gen. Laws ch. 269, § 10). Criminal sanctions may be imposed on, among others:
(a) Whoever, except as provided or exempted by statute, knowingly has in his possession ... a firearm, loaded or unloaded, as defined in [ch. 140, § 121] without either:
(1) being present in or on his residence or place of business; or
(2) having in effect a license to carry firearms issued under [ch. 140, § 131 governing licensure];
(h)(1) Whoever owns, possesses or transfers a firearm, rifle, shotgun or ammunition without complying with [ch. 140 § 129C governing FID cards]....
Mass. Gen. Laws ch. 269, § 10. A minimum of eighteen months imprisonment is required for a section 10(a) violation, id. ch. 269, § 10(a), and enhanced punishment may be imposed for persons who violate this subsection “by means of a loaded firearm,” id. § 10(n). Imprisonment is not mandatory for all section 10(h) violations. See id. § 10(h)(1).[3]
At the heart of Powell’s due process claim is a statutory presumption that arises in criminal prosecution for a firearms offense.
A defendant in a criminal prosecution, relying for his justification upon a license, appointment, admission to prae *339 tice as an attorney at law, or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized.
Mass. Gen. Laws ch. 278, § 7 (emphasis added). Accordingly, unless an individual standing accused of unlawfully possessing a firearm produces evidence at trial demonstrating licensure, state law presumes that he is not so licensed. See Commonwealth v. Davis, 359 Mass. 758, 270 N.E.2d 925, 926 (1971) (noting that the section 7 criminal procedure provision “allows the defendant to show that his conduct is within an exception to the proscription” on carrying firearms). Section 7 is a rule of state criminal procedure that applies in an array of criminal prosecutions beyond the firearms context.
Within this statutory framework, the SJC has long held that a section 10 firearms offense is a public welfare offense that imposes a general prohibition against carrying a firearm for which both exceptions and exemptions may apply in any given case. Commonwealth v. Jackson, 369 Mass. 904, 344 N.E.2d 166, 174 (1976); Jones, 361 N.E.2d at 1310-13; see Davis, 270 N.E.2d at 926 (explaining that section 10(a) is a regulatory measure “proscribing] certain inherently dangerous acts”). In order to secure a conviction for a section 10 firearms offense, the Commonwealth must prove beyond a reasonable doubt that (1) the accused knowingly possessed a firearm, and (2) the firearm met the legal definition provided under Chapter 140, § 121. Jones, 361 N.E.2d at 1311-13; Jackson, 344 N.E.2d at 174. Pursuant to the section 7 criminal procedure provision, evidence of license may operate as an affirmative defense at a criminal trial for which the accused bears the burden of production only: “Absence of a license is not an element of the crime as that phrase is commonly used.... [Rather,] the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist.” Jones, 361 N.E.2d at 1311.[4]
In considering Powell’s direct appeal, the SJC saw no reason to stray from its established state precedent, which includes the holding in Jones that the state law placing the burden of production on a defendant satisfies the baseline due process demands under Winship. See id. at 1313. It is this allegiance that fuels the bulk of Powell’s due process claim.
Powell first argues that the very text of the statute of conviction contemplates that absence of license is an element of the offense. He criticizes the SJC for follow *340 ing the “muddled rationale” of Jones, which he characterizes as recasting this essential element as an affirmative defense of licensure. Powell, therefore, urges us to abide by the plain language of the state statute and recognize absence of license as an operative element of the firearms charges that were levied against him. This, we cannot do.
It is, of course, the duty of 'the state high court to construe the meaning of state statutes, including criminal offenses and rules of procedure, and the SJC has been dogmatic in following the Jones exposition for more than three decades. See Commonwealth v. Smith, 444 Mass. 497, 829 N.E.2d 1090, 1092-93 (2005); Commonwealth v. Anderson, 38 Mass.App.Ct. 707, 651 N.E.2d 1237, 1240 (1995) (same); see also Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The SJC’s exposition represents the very meaning of the statute intended by the state legislature, and we are duty bound, in no uncertain terms, to follow that state precedent. See Mullaney, 421 U.S. at 691 & n. 11, 95 S.Ct. 1881; Marshall, 753 F.3d at 19.
Still, Powell points to select state case law in order to stir up some ambiguity on the criminal elements of a section 10 firearms offense. He cites two cases in which the SJC has expressed that mere possession of a firearm is not unlawful, precedent that he sees as conflicting with the Jones line. See Commonwealth v. White, 452 Mass. 133, 891 N.E.2d 675 (2008); Commonwealth v. Alvarado, 423 Mass. 266, 667 N.E.2d 856 (1996). But, as is often the case, context clarifies.
The SJC in White, admittedly, painted with a broad brush when recounting the components of proof for a firearms crime. See White, 891 N.E.2d at 678 (noting that “the Commonwealth must prove that the defendant knowingly possessed a firearm without ... having in effect a license to carry firearms or [an FID card]”). However, its opinion otherwise shows no intent to undo clear and longstanding precedent governing the legal elements for a section 10 firearms offense and the effect of the section 7 criminal procedure provision a criminal trial. See id.
The same is true for the Fourth Amendment discussion in Alvarado.. There, the SJC emphasized that mere possession of a firearm may not serve as the sole factual predicate for law enforcement’s reasonable suspicion of unlawful conduct necessary to constitutionally seize and search a person or property. Alvarado, 667 N.E.2d at 859-60. This makes eminent sense given that an officer on the streets generally has no way of knowing whether a person’s “mere possession” of a firearm comports with the state’s regulatory requirements. See, e.g., Commonwealth v. Couture, 407 Mass. 178, 552 N.E.2d 538, 540 (1990) (defendant was merely “seen in public with a handgun” and police “had no reason to believe ... that the defendant had no license to carry a firearm”); Commonwealth v. Toole, 389 Mass. 159, 448 N.E.2d 1264, 1268 (1983) (police “apparently never asked the defendant whether he had a license to carry a firearm” but instead unlawfully searched the vehicle for one without any basis for a reasonable suspicion of unlawful possession). And, the SJC has made it clear that its Fourth Amendment decisions do not confuse or otherwise alter its Jones due process precedent. See Commonwealth v. Gouse, 461 Mass. 787, 803 n. 17, 965 N.E.2d 774 (2012); Couture, 552 N.E.2d at 540-41. Ultimately, in Massachusetts the presumed baseline of lawful possession afforded to an individual for Fourth Amendment purposes falls away in a criminal prosecution where a person stands at trial accused of unlawful firearms possession and makes *341 no attempt to produce evidence of proper licensure.
Powell, therefore, does not establish any irreconcilable conflict embedded within state case law, much less one that might allow us to disregard Jones and its progeny. See Mullaney, 421 U.S. at 691 & n. 11, 95 S.Ct. 1881 (referencing “obvious subterfuge” as an example of “extreme circumstances” that may warrant setting aside state court exposition of state law); see also McMillan v. Pennsylvania, 477 U.S. 79, 89 n. 5, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (in discrediting a subterfuge-type argument, the Supreme Court “rejected] the view that anything in the Due Process Clause bars States from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions”).
Powell next faults the SJC for neglecting to “analyze the effect of the indictment or complaint listing the ingredients or elements of the crime,” as he purports is required by Apprendi and Blakely. See Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He sees the Apprendi and Blakely holdings as somehow requiring that language in a charging instrument modify the legal elements for a criminal offense prescribed under law and points to language in his criminal complaint that expressly references the absence of a license and an FID card. Neither decision, however, bears this weight. See Apprendi 530 U.S. at 468-69, 477, 484-88, 490-96, 120 S.Ct. 2348 (evaluating the constitutionality of a criminal procedure set forth under the state statutes, not the indictment); Blakely, 542 U.S. at 301, 303-04, 124 S.Ct. 2531 (applying Apprendi rule to hold that a jury finding required for a fact that enhances a sentence beyond the statutory maximum of the standard range). Moreover, the Apprendi Court stressed that the Winship due process issue that it faced did not “raise any question concerning the State’s power to manipulate the prosecutor’s burden of proof by, for example, relying on a presumption rather than evidence to establish an element of an offense, or by placing the affirmative defense label on at least some elements of traditional crimes.” 530 U.S. at 475, 120 S.Ct. 2348 (internal citations and quotation marks omitted). Therefore, we see no error, let alone objectively unreasonable error, in the district court’s decision to omit Apprendi and Blakely from its due process analysis.
Bound as we are by state precedent on the meaning and functionality of state criminal law and procedure, the decisive § 2254 inquiry for us is this: whether the SJC’s decision that the state law prescription of licensure as an affirmative defense (imposing only a burden of production, not persuasion, on a defendant) accords with procedural due process under the Federal Constitution is contrary to, or comprises an unreasonable application of, clearly established Supreme Court precedent. To this legitimate question, Powell weakly criticizes the SJC’s allegiance to the due process analysis in Jones. He contends that the SJC in his direct appeal failed to account for that court’s error in Jones in tying .its due process analysis to the so-called “comparative convenience” test under Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1933). We are not persuaded of any objectively unreasonable legal error.
It is true that the Jones court took its cue from Morrison, which discusses the “limits of reason and fairness” under due process for placing the burden of production on an accused in a criminal case. See Jones, 361 N.E.2d at 1311-12. The state *342 court relied on the following guideposts as set forth in Morrison: •
The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.
For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister effect or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception.
Morrison, 291 U.S. at 88-89, 91, 54 S.Ct. 281 (internal quotation marks and brackets omitted) (emphasis added); see Jones, 361 N.E.2d at 1312 (quoting Morrison). After reaffirming that the section 10 firearms offense is in the line of general prohibition crimes, the SJC then analyzed the due process question under the comparative convenience test. Jones, 361 N.E.2d at 1312-13.
In particular, the Jones court considered the relative procedural burdens imposed by the section 7 criminal procedure provision, including that (i) various licensing authorities statewide issued and renewed licenses, (ii) an accused could produce evidence of license without testifying and with relative ease as compared to the prosecutor, and (iii) the state’s statutory scheme merely required evidence of license in court rather than when first confronted by law enforcement in order to avoid criminal conviction based on “the minor mistake of leaving the license at home.” Id. It also considered the scant risk of erroneous conviction, remarking that: “We find it nearly impossible to believe that [the accused] had such a license but withheld it, subjecting himself to the risk of a mandatory term of imprisonment” — “ ‘[s]uch an absurd game.does not contribute to a search for truth....’” Id. (quoting Williams v. Florida, 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)). In the end, the Jones court found “no unfairness in [its] traditional rule.” Id.
Given that the section 10 firearms offense remains a general prohibition crime in the Commonwealth, it comes as no surprise to us that the SJC in Powell’s direct appeal decided to abide by the due process analysis in Jones. Cf. Morrison, 291 U.S. at 91-93, 54 S.Ct. 281 (holding that the state crime under review was not one of “general prohibition” before considering whether the evidence had any “sinister significance” in relation to the presumed culpability component). Moreover, between the time of Jones and Powell’s direct appeal, the Supreme Court’s precedent has developed significantly in the field of state law affirmative defenses that fully satisfy the Winship baseline demand. See, e.g., Gilmore v. Taylor, 508 U.S. 333, 341, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993); Medina, 505 U.S. at 445-46, 112 S.Ct. 2572; Martin v. Ohio, 480 U.S. 228, 233-35, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). This precedent on affirmative defenses provides ready support for concluding that the SJC’s due process ruling in Powell’s direct appeal is not objectively unreasonable. See Patterson, 432 U.S. at 210, 97 S.Ct. 2319 (holding that due process does not create “a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable *343 doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.”); see also Martin, 480 U.S. at 238-35, 107 S.Ct. 1098 (upholding state statute that placed on the accused the burdens of production and of persuasion beyond a reasonable doubt for self-defense as an affirmative defense). Powell neither addresses this clear Supreme Court precedent governing affirmative defenses, nor cites even a single roughly comparable federal case in which a state conviction secured under a statutory construct that is analogous to Massachusetts law was set aside as violating the Winship due process demands.[5]
Powell next faults the SJC for failing to account for the advent of the computer age under the comparative convenience test applied in Jones. Because nearly forty years has passed since the Jones decision, Powell contends that prosecutors now would no longer bear a significant burden in having to present evidence that a particular firearm is unlicensed. His understanding of the modern day burden for a prosecutor to discover licensing evidence does not square with the SJC’s, however. See Gouse, 965 N.E.2d at 789 (“reviewing] the department’s records and the police departments in any towns or cities in which the defendant may have lived” would comprise “a daunting task [where] the defendant may have assumed an alias or resided at different, or suspect locations”). Powell also ignores this state authority and otherwise fails to offer any sound basis that might compel us to disregard the SJC’s own assessment on the current practical workings of the state licensing system, let alone give reason to find that the SJC’s decision in the direct appeal was objectively unreasonable.
In the end, the due process question here evokes the type of constitutional standard established by the Supreme Court that permits a fair amount of latitude in the exercise of sound decisional judgment. See Medina, 505 U.S. at 445-46, 112 S.Ct. 2572; McMillan, 477 U.S. at 91, 106 S.Ct. 2411; Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir.2001). Even to the extent that “it is a close question whether the state decision is in error,” such is not the threshold required for establishing an objectively unreasonable application of federal law under AEDPA. Morgan, 677 F.3d at 47 (internal quotation marks omitted). Accordingly, we hold that Powell’s due process claim provides no basis for granting § 2254 habeas relief.
B. Second Amendment
Powell next seeks § 2254 habeas relief on the basis that his state firearms convictions violate his right to keep and bear arms under the Second Amendment. He presents two claims; the first challenges the minimum age requirements for state firearms licensure (with a related equal protection claim), and the second revisits *344 the section 7 criminal procedure provision through a different constitutional prism. For both, Powell stands on the nascent Supreme Court precedent establishing that the Second Amendment secures a limited individual right to keep and bear arms for self-defense of hearth and home unconnected to organized militia. Heller, 554 U.S. 570, 128 S.Ct. 2783; see McDonald, 561 U.S. 742, 130 S.Ct. 3020 (holding that the Second Amendment fully applies to state and local regulation through the Fourteenth Amendment). We address each in turn.
1. Minimum Age Qualifications
A qualified applicant who is at least fifteen years of age may obtain an FID card for possession of a firearm in the home or business premises but must be at least' twenty-one years of age in order to obtain a license to publicly carry a firearm. See Mass. Gen. Laws ch. 140, §§ 129B(1)(v), 131(d). Powell contends that this age-based distinction unlawfully effects “[an] absolute prohibition of an entire class of law-abiding adults from bearing arms,” namely, those who are eighteen-to-twenty years old, and, thus, runs contrary to his Second Amendment and Equal Protection rights. We, however, agree with the Commonwealth that these federal constitutional claims are barred by the procedural default rule.
A federal court generally will not review a § 2254 habeas claim when the state court’s decision for that claim rests on a state law ground that is independent of the federal question and adequate to support the judgment. Martinez v. Ryan, - U.S. -, 132 S.Ct. 1309, 1315-16, 182 L.Ed.2d 272 (2012); see Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir.2013). Grounded in comity and federalism, the procedural default rule bars § 2254 habeas relief “when a state court declined to address a prisoner’s federal claims because the prisoner had failed to meet a state procedural requirement.” Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), limited in part by Martinez, 132 S.Ct. at 1319; Rosenthal v. O’Brien, 713 F.3d 676, 683 (1st Cir.), cert. denied, - U.S. -, 134 S.Ct. 434, 187 L.Ed.2d 292 (2013).
In Massachusetts, “[o]nly one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him.” Commonwealth v. Gordon, 354 Mass. 722, 242 N.E.2d 399, 401 (1968); see Commonwealth v. Brunette, 361 Mass. 6, 277 N.E.2d 826, 830 (1972). A criminal defendant who is charged with violating a licensing statute may challenge the underlying state legislation “even in the absence of an application for a license,” but the scope of that state judicial review has its limits. Gordon, 242 N.E.2d at 401. In such cases, the SJC restricts its attention to the particular statutory provisions that are actually implicated by the charged unlicensed activity and declines to address provisions that do not represent injury incurred by virtue of the particular conviction secured against that defendant. See id. at 401-02.
Here, the SJC in Powell’s direct appeal followed this state norm when declining to review the merits of Powell’s age-based claims. Powell’s criminal convictions rested on his conduct of publicly carrying a loaded firearm without authorization, and his lack of licensure was presumed due to his failure to produce proof on that affirmative defense. When considering Powell’s argument that his firearms convictions must be reversed because the minimum age qualification was unconstitutional, the SJC immediately noted that Powell had not applied for a firearms permit and had failed to demonstrate that he *345 would have been denied licensure based solely on his age. See Powell, 946 N.E.2d at 129-30 (citing Jackson, 344 N.E.2d at 169-70 n. 3). The state court ruled, therefore, that Powell’s narrow constitutional challenge to his convictions was foreclosed. See id.
In so holding, the SJC recognized that even if the age-based claims had merit, Powell’s firearms convictions would remain intact given the various eligibility requirements left unchallenged that might very well operate to legitimately deny him a license, such as being a “suitable” person. See Mass. Gen. Laws ch. 140, § 131(d). In other words, the court essentially held that the purportedly unconstitutional minimum age requirement, standing alone, did not necessarily injure Powell by rendering the convictions themselves unconstitutional. We conclude that the SJC’s decision declining to address the merits of the federal constitutional questions rested on an adequate and independent state law ground that bars our review of Powell’s constitutional claims.
Powell seeks to excuse his state court default by relying on the futility doctrine. See Hodge, 739 F.3d at 43 (federal court may excuse state court default where a petitioner shows cause and actual prejudice). His argument is misplaced, however. Although federal courts may apply the futility doctrine in narrow circumstances for the federal exhaustion requirement, see Allen v. Attorney General of State of Me., 80 F.3d 569, 573 (1st Cir.1996); Powell provides no authority to establish that the doctrine has any bearing on the excuse inquiry. Indeed, not one of the cases that he cites involves a § 2254 habeas petition, and our own research casts significant doubt on his presumed legal position. See Berkley v. Quarterman, 310 Fed.Appx. 665, 672-73 (5th Cir.), cert. denied, 558 U.S. 843, 130 S.Ct. 366, 175 L.Ed.2d 70 (2009) (declining to recognize a futility exception for the state procedural default rule).
Powell’s cursory argument on prejudice also fails. By leaving untouched the various eligibility requirements for securing a license to publicly carry a loaded weapon, a successful constitutional challenge to the state’s minimum age qualification alone does not necessarily demonstrate illegal state confinement. See 28 U.S.C. § 2254(a); Allen, 442 U.S. at 154-55, 99 S.Ct. 2213 (for a § 2254 petition, “[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights”).[6]
Accordingly, we are foreclosed from reaching the merits of Powell’s constitutional attacks on the minimum age qualification for obtaining a license to publicly carry a firearm in Massachusetts.
2. Criminal Procedure Provision
Powell next revisits the section 7 criminal procedure provision, arguing that the lack of license presumption infringes on his Second Amendment rights as secured under Heller and McDonald. According to Powell, these decisions “restored the presumption of innocence, invalidating statutes like [section 7]” that impose criminal punishment on persons “simply for exercising their Second Amendment rights.” The Commonwealth agrees that we ought to afford his claim de novo review, because the SJC’s decision is silent on this constitutional claim. See Clements v. Clarke, 592 F.3d 45, 52, 54 (1st Cir.2010). Even *346 without the constraints of AEDPA, however, Powell’s claim quickly crumbles.
Powell attempts to launch a Second Amendment attack on the method or legislative design by which the Commonwealth has chosen to criminally enforce its firearms licensing scheme. He avers that the viability of his claim does not necessarily “depend upon whether the Second Amendment right extends outside the home,” because he reads the Heller/McDonald decisions as affirmatively precluding states from “imposing] a general prohibition against carrying a firearm” and from “proscribing] carrying a firearm, alone, as an inherently dangerous act [that is] subject to criminal prosecution.”[7] But, in the midst of his iterations on the holdings of Heller and McDonald, Powell underscores that he is not “challenging] the licensing scheme as a whole” nor arguing that “generally requiring firearm owners to obtain licenses and registration cards violates the Second Amendment.” Thus, on close inspection, Powell’s claim is nothing more than a hollow recapitulation of his procedural due process claim in Second Amendment garb, and its fate is the same.
Nowhere in its dual decisions did the Supreme Court impugn legislative designs that comprise so-called general prohibition or public welfare regulations aimed at addressing perceived inherent dangers and risks surrounding the public possession of loaded, operable firearms. Rather, the Court attended to legislative substance and endorsed the continuing viability of a range of state firearms regulations without endeavoring to draw Second Amendment lines for state legislative architecture. See Heller, 554 U.S. at 626-27, 128 S.Ct. 2783; McDonald, 130 S.Ct. at 3047. In fact, along its sojourn, the Court recognized that states have historically executed firearms regulation through general prohibition public safety laws. See Heller, 554 U.S. at 631-32, 128 S.Ct. 2783.
Powell’s reliance on Herrington v. United States, 6 A.3d 1237 (D.C.2010), also does not help him. There, the D.C. Court of Appeals reversed a defendant’s conviction for unlawful possession of ammunition that rested on a general prohibition criminal statute in which the accused had the burden of proving registration as an exception or affirmative defense. 6 A.3d at 1240-47. Significant to the court, the defendant was convicted for unlawfully possessing handgun ammunition in his home, and the court restricted the reach of its holding to the statute of conviction as applied to the defendant. Id. at 1242-45. It held that “the Second Amendment guarantees a right to possess ammunition in the home that is coextensive with the right to possess a usable handgun there,” id. at 1243, and “expressed] no opinion as to whether the [D.C.] statute is constitutional in other applications [such as when] applied to possession of handgun ammunition outside the home,” id. at 1244, n. 25. Herrington, therefore, has no bearing on Powell’s convictions which rest on publicly carrying a loaded firearm without a license.[8]
*347 More fundamentally, given the public sphere context for his firearm possession, Powell provides us with no basis for concluding that his convictions could even reach the safe haven of the Second Amendment. He boldly — and wrongly— pronounces that the Supreme Court in Heller “clearly established that the right to keep and bear arms encompasses one’s ‘person’ unrelated to the home.” (Emphasis in original.) We flatly reject his read. Together, Heller and McDonald establish that states may not impose legislation that works a complete ban on the possession of operable handguns in the home by law-abiding, responsible citizens for use in immediate self-defense. See Heller, 554 U.S. at 628-32, 635-36, 128 S.Ct. 2783; McDonald, 130 S.Ct. at 3036-46, 3050; see Hightower, 693 F.3d at 72; Booker, 644 F.3d at 22, 25 n. 17. The neoteric decisions addressed only the setting of “us[ing] arms in defense of hearth and home,” left open for future cases the sort of judicial review to be applied to other firearms regulation, and firmly disavowed any notion that an individual has a constitutional right “to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.” See Heller, 554 U.S. at 626-35, 128 S.Ct. 2783; McDonald, 130 S.Ct. at 3047, 3050; see also Booker, 644 F.3d at 22.[9]
*348 While the Supreme Court spoke of a right of law-abiding, responsible citizens to keep and bear arms “in case of confrontation” outside the context of an organized militia, Heller, 554 U.S. at 582-92, 128 S.Ct. 2783; see McDonald, 130 S.Ct. at 3036-42, 3048, it did not say, and to date has not said, that publicly carrying a firearm unconnected to defense of hearth and home and unconnected to militia service is a definitive right of private citizens protected under the Second Amendment. Debate continues among courts. Compare Peruta v. County of San Diego, 742 F.3d 1144, 1149-66 (9th Cir.2014), request for rehearing en banc granted, 781 F.3d 1106, 2015 WL 1381752 (9th Cir.2015) (No. 10-56971); Drake v. Filko, 724 F.3d 426, 430-31 (3d Cir.2013), cert. denied, - U.S. -, 134 S.Ct. 2134, 188 L.Ed.2d 1124 (2014); Woollard, 712 F.3d at 874-76; Moore v. Madigan, 702 F.3d 933, 935-36 (7th Cir.2012), with Peruta, 742 F.3d at 1179-91 (Thomas, J., dissenting); Drake, 724 F.3d at 444-46 (Hardiman, J., dissenting); Moore, 702 F.3d at 944-49 (Williams, J., dissenting); see also United States v. Masciandaro, 638 F.3d 458, 467-68, 474-76 (4th Cir.2011).[10]
Perhaps recognizing that we would reject his argument that Heller and McDonald reach so far, Powell nevertheless invites us to hold that the limited Second Amendment right as articulated in Heller extends outside the vicinity of the home. We decline to do so.
This circuit has yet to weigh in on “the scope of the Second Amendment as to carrying firearms outside the vicinity of the home without any reference to protection of the home.” Hightower, 693 F.3d at 72. Thus far, we have held that any individual right “in carrying concealed weapons outside the home is distinct from [the] core interest emphasized in Hellerand that under Heller, “[licensing of the carrying of concealed weapons is presumptively lawful.” See id. at 72-74 & n. 8. Yet, Powell offers only a meager measure of briefing, about one page, to support his rather significant request. He cites two decisions in which the Seventh and Ninth Circuits ventured into the topic of putative gun rights in the public sphere as prompted by the holistic, substantive effect of the regulations challenged before them. See Moore, 702 F.3d 933; Peruta, 742 F.3d 1144.[11] Powell’s slight advocacy, however, *349 makes his coquetry the proper candidate for appellate waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990); cf. Moore, 702 F.3d at 935 (“The parties and the amici curiae have treated us to hundreds of pages of argument, in nine briefs” as advocacy on Second Amendment rights in the public sphere.).
All told, we conclude that Powell’s Second Amendment claim provides no grounding for setting aside his state firearms convictions.
C. Sixth Amendment Right to Counsel
Powell’s ineffective assistance of counsel claim relates to his trial counsel’s failure to move to suppress his statement in which he denied to the arresting officer that he had possessed a firearm, without the benefit of Miranda warnings. The SJC rejected his constitutional claim on the basis that the allegedly deficient performance of counsel caused Powell no prejudice, because there was evidence that the police officers saw Powell holding a firearm and that he attempted to conceal a gun and evade the police while doing so. Powell, 946 N.E.2d at 125; see Jackson, 344 N.E.2d at 174 (prosecution must prove that the accused “knew that he was carrying a firearm” and need not prove that the accused knew he lacked a license to possess and carry a firearm).[12]
Although Powell agrees that the state court decision is reviewed under AEDPA, he fails to indicate how it is “contrary to, or involved an unreasonable application of, clearly established Federal law” as determined by the Supreme Court. 28 U.S.C. § 2254(d). Indeed* he does not cite to any Supreme Court authority, such as Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), or Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to grapple with the SJC’s analysis at all. See Lopez, 135 S.Ct. at 3 (reminding that Supreme Court precedent serves as the benchmark for securing § 2254 relief). Accordingly, we deem his argument waived. See Glacken, 585 F.3d at 552.
III. Conclusion
Powell’s petition gives no grounding for setting aside his state firearms convictions. Accordingly, we affirm the district court’s decision to deny his § 2254 petition.

So ordered.

. Powell also was convicted for resisting arrest, which is not a part of this habeas petition. Additionally, although it appears from the record that Powell has now completed his sentence, he filed his petition challenging the legality of his firearms convictions before his sentence concluded. We find that his petition is neither moot nor beyond the jurisdictional reach of 28 U.S.C. § 2254(a). See Spencer v. Kemna, 523 U.S. 1, 7-8, 118 S.Ct. 978, 140 *336 L.Ed.2d 43 (1998); Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); see also Lefkowitz v. Fair, 816 F.2d 17, 19 (1st Cir.1987).

. Comprehensive new state legislation amending a variety of firearms regulations was enacted by the Commonwealth in August 2014. 2014 Mass. Acts ch. 284 ("An Act Relative to the Reduction of Gun Violence”). Among other changes, the new law will eliminate the category of Class B license in order to create a unitary license to carry. See, e.g., id. at §§ 24, 46-48, 60, 68, 71, 101. Our survey of Massachusetts law in this opinion generally adheres to the laws in effect at the time of Powell’s criminal conduct. Moreover, our summary is no more than that. Chapter 140 of Massachusetts General Laws requires licensing for many activities in the Commonwealth, and the regulatory scheme for firearms within that chapter is fairly extensive, incorporating various requirements for lawful possession and carrying relating to the applicant, the setting, and the usage. See Mass. Gen. Laws ch. 140, §§ 121-131P; see also 2014 Mass. Acts ch. 284, § 70 (new legislation enacted an additional provision, Mass. Gen. Laws ch. 140, § 131Q).

. We note that the mere failure to produce a firearms license upon demand may subject the person to surrendering the firearm, but such failure is not, standing alone, criminal. See Mass. Gen. Laws ch. 140, § 129C; see Jones, 361 N.E.2d at 1312.

. The state court has affirmed repeatedly the Jones court’s exposition on both the elements of a state firearms offense and licensure operating as an affirmative defense. See Commonwealth v. Humphries, 465 Mass. 762, 991 N.E.2d 652, 658-59 (2013); Commonwealth v. Eberhart, 461 Mass. 809, 965 N.E.2d 791, 795 (2012); Commonwealth v. Jefferson, 461 Mass. 821, 965 N.E.2d 800, 809-11 (2012); Commonwealth v. Gouse, 461 Mass. 787, 965 N.E.2d 774, 788 n. 17 (2012); Commonwealth v. Young, 453 Mass. 707, 905 N.E.2d 90, 95 n. 9, 96 (2009); Commonwealth v. Colon, 449 Mass. 207, 866 N.E.2d 412, 429 (2007); Commonwealth v. Anderson, 445 Mass. 195, 834 N.E.2d 1159, 1173-74 (2005); Commonwealth v. Than, 442 Mass. 748, 817 N.E.2d 705, 708 (2004); Ramirez, 555 N.E.2d at 211; Commonwealth v. Tuitt, 393 Mass. 801, 473 N.E.2d 1103, 1109-10 (1985). This procedural framework with respect to license as an affirmative defense is not unusual even among federal statutes. See, e.g., United States v. Matthews, 749 F.3d 99, 104-05 (2014) (holding that "a defendant seeking the benefit of an exception” under the pertinent statute “must shoulder the burden of coming forward with evidence regarding that exception,” including a valid marijuana prescription).

. Powell contends that the SJC in his direct appeal ought to have followed the "rational connection" test under Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). However, this Supreme Court precedent is ill-fitted to the due process question for the Massachusetts firearms crime, because both cases involved state statutory schemes that relieved the prosecutor from proving an element of the crime; neither involved statutory affirmative defenses. See Tot, 319 U.S. at 464, 63 S.Ct. 1241 (statute set forth that mere possession of the firearm served as presumptive proof that it was "shipped or transported in interstate or foreign commerce,” an element of the offense); Romano, 382 U.S. at 137 n. 2, 137-38, 86 S.Ct. 279 (statute set forth that mere unexplained presence at the site of an illegal alcohol still served as sufficient proof that the still or distilling apparatus was "in his possession or custody, or under his control,” an element of the offense).

. Powell’s other sundry arguments for halting the procedural default bar wholly lack merit and do not warrant extended attention.

. As earlier noted, the state firearms offense is a public welfare or general prohibition offense designed' "to control the carrying of firearms so as to protect the public from the potential danger incident to [their] unlawful possession.” Commonwealth v. Jefferson, 461 Mass. 821, 965 N.E.2d 800, 808 (2012) (internal quotation marks and ellipses omitted); see Commonwealth v. Young, 453 Mass. 707, 905 N.E.2d 90, 96 (2009); Davis, 270 N.E.2d at 926.

. The D.C. court also included in its analysis numerous caveats beyond the home-versus-public distinction. It took note, for example, that in the District of Columbia, the relative burden of producing licensing paperwork remained in equipoise between the government and the defense. Herrington, 6 A.3d at 1245 *347 n. 30; see Brown, v. United States, 66 A.2d 491, 494 (D.C.1949) (unlike most states, only one licensing authority exists in the relatively small geographical area of the District of Columbia and that entity annually issues only a small number of licenses). This is markedly different from the burden faced by law enforcement in Massachusetts. See Gouse, 965 N.E.2d at 789.

. Several circuits have adopted a two-part framework for evaluating a claim of Second Amendment infringement in the post-Heller era. Broadly speaking, some courts first consider whether the challenged law imposes a burden'on conduct that falls within the scope of the Second Amendment's guarantee as historically understood, and if so, courts next determine the appropriate form of judicial scrutiny to apply (typically, some form of either intermediate scrutiny or strict scrutiny). See, e.g., Jackson v. City and County of San Francisco, 746 F.3d 953, 962-63 (9th Cir.2014), petition for cert. filed, (U.S. Dec. 12, 2014) (No. 14-704); Drake v. Filko, 724 F.3d 426, 429 (3d Cir.2013), cert. denied, - U.S. -, 134 S.Ct. 2134, 188 L.Ed.2d 1124 (2014); Woollard v. Gallagher, 712 F.3d 865, 874-75 (4th Cir.), cert. denied, -U.S. -, 134 S.Ct. 422, 187 L.Ed.2d 281 (2013); Nat'l Rifle Assn’n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 194 (5th Cir.2012), cert. denied, - U.S. -, 134 S.Ct. 1364, 188 L.Ed.2d 296 (2014); United States v. Greeno, 679 F.3d 510, 518 (6th Cir.), cert. denied, -U.S. -, 133 S.Ct. 375, 184 L.Ed.2d 222 (2012); Heller v. District of Columbia, 670 F.3d 1244, 1252 (D.C.Cir.2011) (Heller II); Ezell v. City of Chicago, 651 F.3d 684, 701-04 (7th Cir.2011); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir.2010), cert. denied, - U.S. -, 131 S.Ct. 2476, 179 L.Ed.2d 1214 (2011); United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.2010), cert. denied, - U.S. -, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011); cf. Kwong v. Bloomberg, 723 F.3d 160, 167 (2d Cir.2013), cert. denied, - U.S. -, 134 S.Ct. 2696, 189 L.Ed.2d 739 (2014); United States v. Bena, 664 F.3d 1180, 1182-85 (8th Cir.2011); United States v. Skoien, 614 F.3d 638, 639-43 (7th Cir.2010) (en banc). See also Tyler v. Hillsdale County Sheriffs Dept., 775 F.3d 308, 318 (6th Cir.2014) ("There may be a number of reasons to question the soundness of [the] two-step approach” adopted by various circuits.).
We thus far have entered the discourse on few occasions, mostly in direct appeals of federal firearms convictions, and have hewed closely and cautiously to Heller’s circumscribed analysis and holding. See United States v. Carter, 752 F.3d 8 (1st Cir.2014); United States v. Armstrong, 706 F.3d 1, 3-8 (1st Cir.2013), vacated and remanded on other grounds, - U.S. -, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014) (Mem.) (citing United States v. Castleman, - U.S. -, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014)); United States v. Rehlander, 666 F.3d 45, 48-50 (1st Cir.2012); United States v. Booker, 644 F.3d 12, 15-26 (1st Cir.2011), cert. denied, - U.S. *348 -, 132 S.Ct. 1538, 182 L.Ed.2d 175 (2012); United States v. Rene E., 583 F.3d 8, 16 (1st Cir.2009), cert. denied, 558 U.S. 1133, 130 S.Ct. 1109, 175 L.Ed.2d 921 (2010); cf. Hightower, 693 F.3d 61.

. We are not sanguine about the Ninth Circuit's characterization that a "consensus” has developed among the circuits regarding some limited right under the Second Amendment to keep and bear operable firearms outside the home for the purpose of self-defense. See Peruta, 742 F.3d at 1166. True, the Seventh Circuit in Moore held as the Ninth Circuit posits, at least to a limited degree. See United States v. Williams, 731 F.3d 678, 693-94 (7th Cir.2013) (Hamilton, J., concurring in part and in the judgment). However, the remaining three circuits identified merely assumed for analytical purposes, without deciding, that the limited Second Amendment individual right described in Heller extended somewhat beyond the hearth and home setting. See Drake, 724 F.3d at 430-31; Woollard, 712 F.3d at 874, 876; Kachalsky v. Cnty. of Westchester, 701 F.3d 81, 89 (2d Cir.2012); see also Hightower, 693 F.3d at 72 n. 8, 74 (declining to decide public sphere question, and assuming without deciding some Second Amendment interest in publicly carrying a concealed weapon).

. See Peruta, 742 F.3d at 1169-71 (county regulation barred a typical, law-abiding citizen fearing for his personal safety from accessing a concealed-carry license, and "open carry” was otherwise prohibited); Moore, 702 F.3d at 940 ("Illinois is the only state that maintains a flat ban on carrying ready-to-use guns outside the home ... [n]ot even Massachusetts has so flat a ban as Illinois”); see *349 also-Holden, 26 N.E.3d at 726 (emphasizing that Massachusetts law does not absolutely prohibit handguns in the home nor ban ready-to-use firearms in public).

. The SJC decided the constitutional issue . under the Massachusetts standard which generally inquires whether there has been serious deficiency of counsel and whether such substandard performance “likely deprived the defendant of an otherwise available, substantial ground of defence.” Commonwealth v. Saferian, 366 Mass. 89, 315 N.E.2d 878, 883 (1974). The law of our circuit is that this Massachusetts standard is the functional equivalent of the federal Strickland standard. Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir.2002).