# United States Court of Appeals
## For the First Circuit

No. 16-1904

ALFRED MORIN,

Plaintiff, Appellant,

v.

MARK K. LEAHY; COMMONWEALTH OF MASSACHUSETTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

J. Steven Foley, for appellant.
Janelle M. Austin, with whom Brian W. Riley and KP Law, P.C.
were on brief, for appellee Leahy.
Julia E. Kobick, Assistant Attorney General, Government
Bureau, with whom Maura Healey, Attorney General of Massachusetts,
was on brief, for appellee Commonwealth of Massachusetts.

June 29, 2017

**TORRUELLA**, **Circuit Judge**.  Dr. Alfred Morin ("Morin") applied to renew his Class A License to Carry ("Class A License").[1] Mark Leahy ("Leahy"), Chief of Police of the Town of Northborough, denied Morin's application, because Morin's two prior convictions for firearms-related misdemeanors barred him from obtaining a Class A License under Massachusetts law.  Morin brings an as-applied constitutional challenge, arguing that Massachusetts law infringes on his Second Amendment right as a "law-abiding, responsible citizen[] to use arms in defense of hearth and home." District of Columbia v. Heller, 554 U.S. 570, 635 (2008).[2]  Morin also brings a claim for declaratory and injunctive relief under 42 U.S.C. § 1983 ("§ 1983") against Leahy, seeking issuance of a Class A License.  Morin's constitutional argument fails, however,

---

[1] The Class A License is the least restrictive license in Massachusetts and entitles the holder to such rights as the ability to purchase, possess, and carry firearms, including large capacity firearms.  The Class A License also permits the holder to carry a concealed firearm in public.  Mass. Gen. Laws ch. 140, § 131(a); Chardin v. Police Comm'r of Bos., 989 N.E.2d 392, 394–95 (Mass. 2013).

[2]  Because this is the only Second Amendment right Morin invokes, we need not decide whether there are other rights under the Second Amendment that could make the denial of a Class A License a constitutional violation.  For instance, nothing in this opinion is meant to suggest that Morin could, or that he could not, have a constitutional right to carry a firearm outside his home.

because a Firearm Identification Card ("FID Card"),[3] in conjunction with a permit to purchase, allows one to acquire a firearm[4] and to possess it in one's home, and thus to exercise the Second Amendment rights at issue in the present case. The denial of a Class A License therefore does not implicate Morin's Second Amendment right to possess a firearm in his home for self-defense, which is the only Second Amendment right he has asserted in this litigation. Because Morin has failed to show a constitutional violation, his § 1983 claim fails as well.

Morin also challenges the constitutionality of the Massachusetts statutory scheme that governs the issuance of FID Cards, because, as the parties agree, due to his prior convictions he will also be denied a FID Card if he were to apply for one.[5] However, Morin lacks standing to bring such a challenge, because

---

[3]  The FID Card is separate and distinct from the Massachusetts licensing to carry scheme, and includes, among others, the right of the holder to possess a non-large capacity firearm within his or her house or place of business, but does not include the right to carry a firearm in any other place. Mass. Gen. Laws ch. 140, § 129B; Chardin, 989 N.E.2d at 394 n.5.

[4]  In this opinion, we use Massachusetts' definition of "firearm," which is "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured." Mass. Gen. Laws ch. 140, § 121.

[5]  We express no opinion as to whether the parties are correct.

he has not applied for a FID Card, and has thus not been denied one.  Therefore, we affirm the decision of the district court.

## I.  Background[6]

In 2004, Morin drove from Massachusetts to Washington, D.C., where he attempted to visit the Smithsonian National Museum of Natural History.  Upon seeing a sign outside the museum indicating that firearms were not allowed into the museum, Morin approached a security guard to check his gun for which he had a Massachusetts Class A License.  The security guard called the police who then arrested Morin.  Morin later pled guilty to attempted carrying of a firearm without a license, D.C. Code § 22-103 (2004), and possession of an unregistered firearm, D.C. Code § 6-2376 (2004).[7]  At the time, both violations were misdemeanor offenses under D.C. law.  Morin otherwise has no criminal record.

In 2008, Morin sought to renew his Class A License with the Northborough Police Department.  Morin incorrectly answered in the negative a question regarding past convictions for firearm

---

[6]  Because this is an appeal from a grant of summary judgment in favor of the defendants, we present the facts in the light most favorable to Morin.  Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157–58 (1st Cir. 2016).

[7]  The provisions of the D.C. Code have been renumbered.  D.C. Code § 22-103 (2004) is now codified at D.C. Code § 22-1803.  D.C. Code § 6-2376 (2004) is now codified at D.C. Code §§ 7-2502.01, 7-2507.06(a).

violations. The Northborough Police Department, through a standard fingerprint check, learned of Morin's convictions in D.C. Leahy denied Morin's application because, due to Morin's prior convictions, Leahy was statutorily barred from issuing a Class A License to Morin. Mass. Gen. Laws ch. 140, § 131(d)(ii)(D), (k). Morin filed a new application for a Class A License in 2015, this time correctly answering the question regarding past firearm violations. Leahy again denied Morin's application due to Morin's prior convictions.

Morin filed suit against Leahy on March 25, 2015, arguing that Leahy's denial of Morin's application for a Class A License violated his constitutionally protected right to possess a firearm for self-defense within the home, and seeking declaratory and injunctive relief under § 1983. Morin argued that the statutory subsection requiring the denial of his applications, Mass. Gen. Laws ch. 140, § 131(d)(ii)(D), violated the Second Amendment of the United States Constitution both facially and as applied to him. On August 12, 2015, the Commonwealth of Massachusetts intervened in the case. The parties filed cross-motions for summary judgment.

On May 18, 2016, the district court granted the Commonwealth's cross-motion for summary judgment. The district court denied Morin's as-applied challenge because Morin only

applied for the least restrictive Class A License and did not apply for a more restrictive license, such as a Class B License to Carry ("Class B License") or a FID Card.[8]  These alternatives would allow one to have a gun within one's home in accordance with the Second Amendment right of "law-abiding, responsible citizens" to defend "hearth and home."  Heller, 554 U.S. at 635.  The district court also concluded that "Morin's facial challenge cannot be maintained, because his own situation presents a set of circumstances in which the application of section 131(d)(ii)(D) is constitutional."

After an unsuccessful motion to alter or amend the district court's judgment, Morin filed a timely notice of appeal, appealing only his as-applied challenge.

---

[8]  Class B Licenses include the ability to purchase, possess, and carry a firearm, but the license does not extend to large capacity firearms or allow a holder to carry a concealed firearm in public. Mass. Gen. Laws ch. 140, § 131(b); Chardin, 989 N.E.2d at 395. However, Massachusetts amended Mass. Gen. Laws ch. 140, § 131 such that licensing authorities, including state police, can no longer issue, renew, or accept applications for a Class B license.  2014 Mass. Acts ch. 284 § 101).  The parties do not dispute that a Class B license was not available to Morin at the time of his application in February 2015.  The district court therefore erred by suggesting Morin could apply for a Class B License in order to possess a firearm in his home.  However, we may affirm on the ground that Morin can still apply for a FID card.  See Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 84 (1st Cir. 2016) ("[W]e may affirm [a] summary-judgment holding on any grounds supported by the record, even if not relied on by the district judge.").

## II.  Discussion

"We review the district court's grant of summary judgment on cross-motions for summary judgment de novo." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 558 (1st Cir. 2010).

Morin argues that his statutory disqualification for a Class A License and the Massachusetts firearm licensing scheme, as applied to him, violates his Second Amendment right to own a firearm in the home for purposes of self-defense. See Heller, 554 U.S. at 635 ("[The Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). However, a more restrictive license, the FID Card, would permit a license holder to have a firearm in the home for purposes of self-defense. Chardin, 989 N.E.2d at 394 n.5. Thus, the rejection of Morin's application for a Class A License does not violate the Second Amendment right he has asserted.

While Morin believes that only a Class A License will allow him to possess a firearm in his home, the Massachusetts Supreme Judicial Court, and this Court interpreting Massachusetts law, have held to the contrary on numerous occasions. See Powell v. Tompkins, 783 F.3d 332, 337 (1st Cir. 2015) ("An FID card permits a qualified person to keep a firearm and ammunition in his

home or place of business but does not by itself allow an individual to carry them in public."); Commonwealth v. Gouse, 965 N.E.2d 774, 799 n.14 (Mass. 2012) ("Under our statutory scheme, an FID card . . . allows the holder to own, transfer, or possess a firearm in his residence or place of business."); Commonwealth v. Powell, 946 N.E.2d 114, 128 (Mass. 2011) ("An FID card allows the holder to own or possess a firearm within the holder's residence or place of business, but not to carry it to or in any other place.").

Morin is correct that a FID Card alone is insufficient to purchase and transport a firearm to one's home. However, Massachusetts allows individuals with a FID Card to apply to a licensing authority for a permit to purchase, rent, or lease a firearm for a proper purpose. Mass. Gen. Laws ch. 140, § 131A. Although a person who purchases a firearm using a FID Card and a permit to purchase may not herself transport the firearm to her home, the law specifically provides that she may have it delivered to her home. Mass. Gen. Laws ch. 140, § 123 ("[D]elivery of a firearm by a licensee to a person possessing a valid permit to purchase said firearm issued under the provisions of section [131A] and a valid [FID] card issued under section [129B] may be made by the licensee to the purchaser's residence or place of business."); Commonwealth v. Seay, 383 N.E.2d 828, 831–32 (Mass. 1978).

Therefore, with both a FID Card and a permit to purchase, one could purchase a firearm, have it delivered to one's home, and possess it there -- without the need for a Class A License.[9]  Thus, the denial of an application for a Class A License does not infringe upon the Second Amendment right to possess a firearm within one's home, the only constitutional right Morin has raised. See Hightower v. City of Boston, 693 F.3d 61, 72 (1st Cir. 2012). See also Heller, 554 U.S. at 635.  Because he has failed to show a violation of his constitutional right to possess a firearm within his home, his § 1983 claim against Leahy also fails.  See Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005) ("Assessing liability [pursuant to § 1983] against the City requires . . . that plaintiff's harm was caused by a constitutional violation . . . .").[10]

---

[9]  Morin's argument that Massachusetts has not granted a permit to purchase since 2006 is irrelevant to the analysis since he has never applied for one, thus has never been denied one, and consequently lacks standing to challenge any such denial.

[10]  Leahy also argues that a § 1983 claim against him for denial of the Class A License fails as a matter of law, because he -- a municipal officer -- had no discretion to grant the License, and was enforcing a state, rather than a municipal policy. See, e.g., Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").  We do not

Morin has also brought an as-applied constitutional challenge to Mass. Gen. Laws ch. 140, §§ 129B(1)(i)(D) and 129B(1)(ii)(D), which control the issuance of FID Cards. All parties agree that if Morin were to apply for a FID Card the licensing authority would be precluded from issuing him a FID Card because of Morin's past convictions. However, without having applied for, or having been denied, a FID Card, Morin can show no injury to sustain his claim, and thus has no standing to challenge the constitutionality of the statutory scheme that governs the issuance of FID Cards. See Hightower, 693 F.3d at 70-71 ("[The plaintiff] lacks standing to raise a claim as to a Class B license; she has never applied for such a license, been denied one, or had such a license revoked. . . . For the same reason, she lacks standing as to an FID card . . . .").

Since the denial of Morin's Class A License application does not infringe on the Second Amendment rights he asserts in this litigation and he lacks standing on his FID Card challenge, it is unnecessary for this Court to reach the other issues presented here, such as the constitutionality of the prohibition against granting a Class A License or FID Card to individuals who

need to reach this argument, however, because Morin has failed to show a constitutional violation.

-10-

have committed nonviolent misdemeanors or the appropriate level of constitutional scrutiny for such an inquiry.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

**Affirmed.**