# United States Court of Appeals
## For the First Circuit

No. 20-1280

ALFRED MORIN,

Plaintiff, Appellant,

v.

WILLIAM LYVER, in his official capacity as Northborough Chief of
Police, and THE COMMONWEALTH OF MASSACHUSETTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Delgado-Hernández, District Judge.*

David D. Jensen, with whom J. Steven Foley was on brief, for
appellant.
Janelle M. Austin, with whom KP Law, P.C. was on brief, for
appellee William Lyver.
Julia E. Kobick, Assistant Attorney General, with whom Maura
Healey, Attorney General, was on brief, for appellee Commonwealth
of Massachusetts.
Neil Goldfarb, amicus curiae, on brief in support of
appellees.

---

* Of the District of Puerto Rico, sitting by designation.

September 14, 2021

BARRON, **Circuit Judge**.  In 2018, William Lyver, Chief of Police for Northborough, Massachusetts, denied Alfred Morin what is known under Massachusetts law as a "permit to purchase" a firearm.  Lyver did so based on Morin's criminal history -- specifically, his two out-of-state firearms-related convictions. Morin thereafter filed suit, in which he alleged that the denial violated his rights under the Second Amendment of the U.S. Constitution as recognized by the United States Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008).  See McDonald v. City of Chicago, 561 U.S. 742, 750 (2010).  The Commonwealth of Massachusetts intervened to defend the denial. Morin then moved for summary judgment, and the defendants cross-moved for the same.  The District Court granted the defendants' cross-motions for summary judgment and rejected Morin's motion for summary judgment.  We affirm.

## I.

In 1985, Morin obtained what was known under Massachusetts law at that time as a Class A license.  Morin v. Lyver, 442 F. Supp. 3d 408, 411 (D. Mass. 2020).  That license authorized Morin to carry a concealed firearm in public, which he did regularly.  Id.; see also Mass. Gen. Laws ch. 140, § 131(a) (2004).  It also authorized him to "purchase, rent, lease, borrow,

- 3 -

possess and carry" both "firearms,"[1] and "rifles and shotguns," including "large capacity" varieties of each type of weapon. Mass. Gen. Laws ch. 140, § 131(a) (2004).

In 2004, Morin brought his pistol on a trip to Washington, D.C. Morin, 442 F. Supp. 3d at 411. While there, he visited the American Museum of Natural History, which displayed a sign stating that firearms were prohibited in the building. Id. Morin asked a museum employee whether he could check the pistol that he was carrying at the time. He was thereafter detained and placed under arrest for violating D.C.'s gun laws. Id.

In November 2004, Morin pleaded guilty to one count of attempting to carry a pistol without a license, in violation of D.C. Code § 22-3204(a)(1) (2004), and one count of possession of an unregistered firearm, in violation of D.C. Code § 6-2376 (2004).[2] Morin, 442 F. Supp. 3d at 411-12. Both convictions were misdemeanors under D.C. law. The former conviction carried a

---

[1] A "firearm" included "a pistol, revolver or other weapon . . . of which the length of the barrel or barrels is less than 16 inches or 18 inches," but excludes any weapon that is "constructed in a shape that does not resemble a handgun, short-barreled rifle or short barreled shotgun" or one that is "not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk-through metal detectors." Mass. Gen. Laws ch. 140, § 121.

[2] These provisions have since been renumbered and are codified at D.C. Code §§ 22-4504(a)(1), 7-2502.01, and 7-2507.06.

maximum sentence of 180 days of imprisonment. The latter conviction carried a maximum sentence of one year of imprisonment.

In 2008, once back in Massachusetts, Morin sought to renew his Class A license. Id. at 412. He filed the requisite application for renewal with his local licensing authority, the Northborough, Massachusetts Police Department. Id.

At that time, a licensing authority could not issue or renew a Class A license to certain categories of persons. The categories included persons who had, "in any state or federal jurisdiction, been convicted" of "a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed." Mass. Gen. Laws ch. 140, § 131(d)(i)(D) (2008).

Morin indicated on his application to renew his Class A license that he did not have any such prior conviction. Morin, 442 F. Supp. 3d at 412. In processing his application, however, the Northborough Police Department ran his fingerprints and learned about his Washington, D.C.-related firearms convictions. Id. The Northborough Police Department denied Morin's application to renew his Class A license on April 29, 2008. See id.

In 2014, Massachusetts modified its firearm licensing scheme. Id. at 412 n.3. Rather than designating licenses to

carry by "Class," as it had, it established a single "license to carry."[3]

In February 2015, Morin applied to the Northborough Police Department for a new license to carry. His application this time did note his D.C. convictions. The Northborough Chief of Police at the time, Mark Leahy, denied the application on February 18, 2015.

Morin filed suit pursuant to 42 U.S.C. § 1983 against Leahy on March 25, 2015 in the District of Massachusetts, alleging that his Second Amendment rights had been violated. Id. at 412. The District Court permitted the Commonwealth to intervene and subsequently entered summary judgment for the defendants on May 18, 2016. Morin v. Leahy, 189 F. Supp. 3d 226, 236-37 (D. Mass. 2016), aff'd, 862 F.3d 123 (1st Cir. 2017). Morin then appealed. Morin, 862 F.3d at 126. We affirmed the District Court's ruling granting the defendants' motions for summary judgment. Id. at 128.

We first explained that Morin "argue[d] that his statutory disqualification for a [license to carry] and the Massachusetts firearm licensing scheme, as applied to him,

_____

[3] The change did not become fully effective until January 2021, but licenses issued or renewed after August 2014 were no longer designated by their "Class" as they had been. We therefore use the term "license to carry" to refer to the type of license that Morin sought in 2018. See 2014 Mass. Acts ch. 284, § 101.

- 6 -

violate[d] his Second Amendment right to own a firearm in the home for purposes of self-defense." Id. at 126 (citation omitted). But, we explained, "a more restrictive license, [a Firearm Identification Card (FID Card)], would permit [such] a license holder to have a firearm in the home for purposes of self-defense." Id. at 127. At the time, an FID Card entitled the holder to "keep a firearm and ammunition in his home or place of business" but did not authorize the holder to carry certain weapons, including large-capacity rifles and shotguns, in public. Id. (quoting Powell v. Tompkins, 783 F.3d 332, 337 (1st Cir. 2015)); see Mass. Gen. Laws ch. 140, §§ 129B(6), 129C; Mass. Gen. Laws ch. 269, § 10. "Thus," we explained, "the rejection of Morin's application for a [license to carry] [did] not violate the Second Amendment right he ha[d] asserted." Morin, 862 F.3d at 127.

We did note that "Morin believe[d] that only a [license to carry] will allow him to possess a firearm in his home," but we explained that he was wrong because he would be permitted to do so with an FID Card. Id. (citing Powell, 783 F.3d at 337; Commonwealth v. Gouse, 461 Mass. 787, 799 n.14 (2012); Commonwealth v. Powell, 459 Mass. 572, 587 (2011)). We also noted, however, that Morin was "correct that [an] FID Card alone is insufficient to purchase and transport a firearm to one's home." Id. But, we observed that Massachusetts General Laws Chapter 140, Section 131A provided that a person with an FID Card could apply

- 7 -

at least in some circumstances for a "permit to purchase." Id. We then explained that "[a]lthough a person who purchases a firearm using [an] FID Card and a permit to purchase may not herself transport the firearm to her home, the law specifically provides that she may have it delivered to her home." Id. (citing Mass. Gen. Laws. ch. 140, § 123). We thus concluded as follows:

> Therefore, with both a[n] FID Card and a permit to purchase, one could purchase a firearm, have it delivered to one's home, and possess it there -- without the need for a [license to carry.] Thus, the denial of an application for a [license to carry] does not infringe upon the Second Amendment right to possess a firearm within one's home, the only constitutional right Morin has raised.

Id. We also explained that Morin had not applied for a permit to purchase and so lacked standing to challenge "any such denial." Id. at 127 n.9.

Finally, we addressed Morin's "as-applied constitutional challenge to" Massachusetts' scheme for the "issuance of FID Cards." Id. at 128. We noted that "[a]ll parties agree[d]" that if he were to apply for an FID Card, Morin would be denied one based on his firearms-related convictions in D.C. Id.; see also Mass. Gen. Laws ch. 140, § 129B(1)(ii)(D). But, we concluded that he lacked standing to bring his as-applied challenge to this aspect of Massachusetts law because he had not applied for an FID Card. Id. As a result, we concluded:

> Since the denial of Morin's [license to carry] application does not infringe on the Second Amendment

- 8 -

rights he asserts in this litigation and he lacks standing on his FID Card challenge, it is unnecessary for this Court to reach the other issues presented here, such as the constitutionality of the prohibition against granting a [license to carry] or [an] FID Card to individuals who have committed nonviolent misdemeanors or the appropriate level of constitutional scrutiny for such an inquiry.

Id.

Subsequently, in February 2018, Morin applied to the Northborough Police Department for an FID Card. Massachusetts law makes issuance of an FID Card mandatory unless the applicant is disqualified as a "prohibited person." Mass. Gen. Laws ch. 140, § 129B(1). The list of "prohibited persons" includes individuals who have been convicted "in any other state or federal jurisdiction" of a felony, certain misdemeanors and violent crimes, or for violating certain laws regulating controlled substances and weapons. Id. § 129B(1)(ii). Although some of these restrictions -- such as the disqualification for individuals convicted of a felony -- are permanent, others "shall not disqualify" an FID Card applicant if at least five years have elapsed since the later of that individual's conviction or release from confinement or supervision. Id. For example, the statute only temporarily disqualifies from obtaining an FID Card those individuals who, like Morin, have been convicted of certain out-of-state firearms-related misdemeanors. See id. §§ 129B(1)(ii)(D), 129B(1)(ii).

- 9 -

By the time that Morin applied for an FID Card in 2018, nearly fourteen years had passed since his conviction for violating D.C.'s gun laws. Thus, then-Northborough Chief of Police Lyver granted Morin's application for an FID Card, as Morin was not a "prohibited person" at that time.

In addition to applying in 2018 for an FID Card from the Northborough Police Department, Morin also applied at that time for a permit to purchase from that same department. Under Massachusetts law, though, Morin could not be eligible for a permit to purchase unless he was also eligible for a license to carry. Id. § 131A. Yet, he was not eligible for a license to carry because his D.C. convictions, notwithstanding their age, rendered him ineligible for that license, since Massachusetts barred anyone with prior firearms-related convictions for which a term of imprisonment could be imposed from obtaining one. See id. § 131(d)(ii)(D). Accordingly, Chief Lyver denied Morin's application for the permit to purchase.

On July 18, 2018, following the denial of his application for a permit to purchase, Morin filed this suit against Chief Lyver pursuant to 42 U.S.C. § 1983. In his complaint, Morin seeks a declaratory judgment that Massachusetts General Laws Chapter 140, Section 131(d)(ii)(D), which prohibits Morin from obtaining a license to carry, "violates . . the Second and Fourteenth Amendments to the U.S. Constitution, to the extent [it]

- 10 -

allow[s] [the defendants] to prohibit otherwise qualified private citizens from purchasing and possessing 'firearms' for the purpose of self-defense in the home" and an injunction against the "customs, policies, and practices related to enforcement of" the same prohibition.  He also seeks an injunction requiring Chief Lyver "to issue [to him] a Massachusetts [license to carry] or [p]ermit to [p]urchase sufficient . . . to possess and purchase a firearm for the purpose of self-defense in the home."

The Commonwealth filed an assented-to motion to intervene as a defendant on October 26, 2018, which the District Court granted.  Morin thereafter filed for summary judgment, and the Commonwealth and Chief Lyver each filed a cross-motion for summary judgment.  In his cross-motion, Chief Lyver incorporated the Commonwealth's argument supporting the constitutionality of the statutory restrictions at issue and argued further that he could not be held liable for executing a "non-discretionary statutory mandate" that "did not cause a violation of Morin's constitutional rights through any municipal custom and policy." Morin contended in his motion for summary judgment, among other things, that Massachusetts had imposed on him a "lifetime handgun ban" which he specified at that time as one that prohibited him from both "acquir[ing]" and "obtain[ing]" a handgun to possess for self-defense in his home.

The District Court ruled against Morin on both his own motion and the defendants' cross-motions. Morin, 442 F. Supp. 3d at 417. The District Court began its analysis by noting that Morin had been granted an FID Card and so "can lawfully possess a firearm within his home." Id. at 414. It then noted Morin's contention that, nonetheless, the provisions of Massachusetts law at issue "burden his Second Amendment right because they prevent him from lawfully obtaining any firearm to possess within his home." Id. The District Court at that point "assume[d], without deciding, that [Morin] is correct that these provisions burden conduct falling within the scope of the Second Amendment right" and moved on to address the level of scrutiny to apply. Id.

The District Court concluded that only intermediate scrutiny -- and not the more intensive form of scrutiny for which Morin advocated -- applied because the provisions at issue burdened only those individuals who were not "law-abiding, responsible citizens," and that Morin did not qualify as such an individual due to his earlier firearms-related convictions in D.C. Id. at 415 (quoting Heller, 554 U.S. at 635) (emphasis omitted). The District Court then upheld the provisions on the ground that they

- 12 -

were substantially related to an important governmental interest. Id. at 417.[4]

Morin appealed the same day. Our review is de novo. See Gutwill v. City of Framingham, 995 F.3d 6, 12 (1st Cir. 2021).

**II.**

As we have seen, the District Court rejected Morin's contention that the restrictions at issue were subject to a more intensive form of scrutiny than intermediate scrutiny. Morin had argued to the District Court that the restrictions were subject to this more intensive form of scrutiny because he contended there that they burdened the core right to possess a firearm that Heller recognized by categorically banning his right to "obtain" or "acquire" a handgun for the purpose of possessing it in the home. Morin, 442 F. Supp. 3d at 414-15. In rejecting Morin's argument for applying the more intensive form of scrutiny that he sought, the District Court did not take issue with the way Morin at that time had characterized the effect of the restrictions. Rather, it determined that, even assuming they had the effect that Morin claimed they had, they were still subject to only intermediate scrutiny because they burdened persons who -- by dint of their

_____

[4] Because the District Court found Massachusetts's licensing restrictions to be constitutional, it did not reach the issue of Chief Lyver's individual liability in granting his motion for summary judgment. Id. at 417 n.5.

- 13 -

prior firearms misdemeanor convictions -- did not qualify as "law-abiding."  Id. at 415.  The District Court thus did not address whether the restrictions at issue could be upheld if they were subjected to the more intensive form of scrutiny that Morin referred to at points as "strong showing" scrutiny and that he contended applied under Heller, notwithstanding his prior convictions in D.C.  Id. at 414.

In now appealing that ruling, Morin notably develops no argument that, insofar as intermediate scrutiny does apply, the District Court erred in upholding the restrictions.  Instead, he contends only that a more intensive form of scrutiny applies and that, under it, these restrictions are unconstitutional.[5]

In pressing that contention to us on appeal, Morin devotes much of his briefing to us to challenging the District Court's conclusion that he is not law-abiding within the meaning of Heller.  But, Morin does not in doing so at any point develop -- or even state -- the argument that he made below that his right to "obtain a handgun in order to possess it" for lawful use at

_____

[5] At oral argument, Morin's counsel did assert that, "[f]irst and foremost, it's the government that bears the burden of showing that the burden is justified, and the statistical evidence we've got doesn't meet that showing."  But, given the focus in Morin's briefing on the contention that the restrictions are subject to a more intensive form of scrutiny than the intermediate scrutiny that the District Court applied, we do not understand that assertion -- belated as it is -- to amount to a contention on appeal that the restrictions would not survive even intermediate scrutiny.

- 14 -

home has been categorically prohibited. (emphasis added). Thus, he has failed to describe how the core right articulated in Heller has been so burdened that "strong showing" scrutiny applies, notwithstanding his previous firearms-related convictions.

True, on appeal, Morin contends that he is subject to a handgun "ban" that he contends triggers such a demanding form of review. However, he does not describe it as a ban on his right to obtain a handgun for the purpose of possessing it in the home, as he did below. He instead describes it on appeal only as a ban on his right to possess a handgun for that purpose, insofar as he describes it with any specificity.[6] And that is true of his reply brief as well.[7] It is clear though, that, in fact, Morin is not

---

[6] For example, in the statement of facts in his opening brief to us, Morin asserts that the Massachusetts "licensing scheme precludes [him] from lawfully possessing a firearm in the home for the purposes of self-defense." (emphasis added). Then, soon after, he characterizes the restrictions as imposing "disarmament." Morin does refer at one point in his opening brief more generally to a "deprivation" to which he is subject, but in doing so he fails to specify what he understands that "deprivation" to be. And, while at another point he argues that his "core right to possess a handgun in his home for self-defense is directly affected," (emphasis added), he again fails to elaborate as to how. Morin also at one point describes the restrictions at issue as "firearm disentrancement," which appears to be a typo. In the remainder of his brief, moreover, he characterizes Massachusetts's actions as imposing a "lifetime handgun ban," without further describing what that ban entails.

[7] The reply brief does early on describe the restrictions at issue as imposing a "lifetime bar." But, in doing so, it does not specify what is barred. It then goes on to state that Morin "seeks to possess a handgun for lawful purposes such as self-defense" but that "Commonwealth law definitively prevents him from doing that

subject to a ban on handgun possession for the purposes of self-defense in the home, because his FID Card permits him to possess a handgun for just that purpose. See Morin, 862 F.3d at 127. Indeed, the Commonwealth makes that very point in arguing that, contrary to Morin's contention on appeal that we must apply "strong showing review" due to the "ban" to which he contends that he is subject, intermediate scrutiny applies.[8]

In pointing out this shift in how Morin describes the restrictions at issue on appeal in arguing for more intensive scrutiny compared to how he described them below in arguing for such demanding review, we do not mean to suggest that there is no argument to be made that the severe though (if Massachusetts is right about how the Commonwealth treats the inheritance of a handgun) not total restriction on acquisition of a handgun for home use may heavily burden the core right that Heller recognized. Nor do we mean to suggest that there is not an argument to be made that insofar as those restrictions have that effect, they warrant more than intermediate scrutiny even when they are applied to

_____

by operation of criminal penalty," (emphasis added) even though it does not, and that he seeks to "challenge categorical restrictions on firearm[] possession by non-violent misdemeanants," (emphasis added) even though the reply brief does not specify the content of those "restrictions."

[8] The Commonwealth further contends that there is not even a ban on Morin's right to obtain a handgun, as he may acquire one through inheritance so long as he has an FID Card. Morin at no point addresses that contention.

someone who, like Morin, has more-than-decade-old misdemeanor firearms-related convictions.

But, here, Morin cannot be said to have made any such argument on appeal for applying that more demanding form of review to the restrictions at issue.  Given the way that he has described on appeal the "ban" that he contends that those restrictions impose on him, no such argument has been advanced to us.  Thus, we must affirm the grant of summary judgment against him because the only ground that he has given for overturning it rests on a description of the restrictions' effect on his conduct that is clearly mistaken insofar as it is developed at all.  See Morin, 862 F.3d at 126 n.8 (explaining that we may affirm a grant of summary judgment on any ground manifest in the record); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  For, although it is true that Morin does argue at length that the District Court erred in relying on the conclusion that he is not "law-abiding" in assessing his Heller-based arguments, he fails to develop any argument for applying a greater level of scrutiny than the District Court applied to the actual restrictions at issue due to the vague way in which he describes them at some points and the specific way that he mischaracterizes them at others.  Accordingly, Morin provides us

with no basis for overturning the District Court's grant of summary judgment to the defendants.

### III.

The District Court's denial of Morin's motion for summary judgment and grants of the defendants' cross-motions for summary judgment are **affirmed**.